Argued and submitted January 29, reversed and
remanded June 9, reconsideration denied July 22,
petition for review allowed October 10, 1982 (293 Or 653)

WELCH,
*Appellant,*

*v.*

BANCORP MANAGEMENT ADVISORS, INC., et al
*Respondents.*

(No. A7606-08607, CA A20958)

646 P2d 57

Mildred J. Carmack, Portland, argued the cause for appellant. With her on the briefs were John R. Faust, Jr., and Schwabe, Williamson, Wyatt, Moore & Roberts, Portland.

William M. McAllister, Portland, argued the cause for respondents. With him on the brief were Gregory R. Mowe, Charles F. Adams, and Stoel, Rives, Boley, Fraser and Wyse, Portland.

Before Buttler, Presiding Judge, and Warden and Warren, Judges.

WARREN, J.

## WARREN, J.

In an action for intentional interference with business relationships, plaintiff appeals from judgment for defendants. Plaintiff assigns as errors: (1) granting summary judgment on the first cause of action; and (2) dismissing a second cause of action, for misrepresentation, which was added in an amended complaint, for failure to relate back to the original complaint within the applicable limitations period. We reverse and remand.

In 1974, plaintiff,[1] a developer, contracted with U.S. Bancorp Realty and Mortgage Trust, dba US BanTrust (Trust), a real estate investment trust, to provide financing for the purchase and rezoning of 68 acres of land owned by Lloyd Corporation in Washington County that would then be resold for actual development. In return, the Trust was to receive interest on the sum borrowed, secured by a mortgage, and one-half the profits on resale of the property. The agreement provided that plaintiff would submit a proposed zone change application to the Trust and Lloyd to approve as to the form of the application. Plaintiff did so, but the Trust rejected the proposed application and refused to make the loan to plaintiff. In December, 1976, after a jury trial, plaintiff recovered a judgment against the Trust for breach of its contract to provide funds for the proposed real estate development.

In this action, to which the Trust is not a party, plaintiff has proceeded against several investment and banking corporations affiliated with U.S. Bancorp. Defendants' officers and agents sat on an investment committee formed to advise the Trust; the Trust itself was managed by a board of trustees but had no staff of employees. It was also apparently contemplated that the Trust would itself borrow money from one or more defendants to provide financing for plaintiff's development project. Plaintiff alleges that defendants, while acting through their agents as advisers to the Trust, made misrepresentations to the Trust to induce it to breach its contract with plaintiff and, in so

---

[1] Plaintiff and another individual were the original purchasers; the other party to the purchase agreement assigned all his interest in the contract to plaintiff before this litigation commenced.

doing, were motivated primarily by their own interests as lenders, which were inconsistent with those of the Trust. Plaintiff also alleges that defendants intentionally misrepresented to plaintiff that a proposed zone application submitted in a certain form would be approved by the Trust. Plaintiff seeks to recover lost profits (less his previous recovery for lost profits from the Trust), out-of-pocket expenses and exemplary damages.

Defendants' motion for summary judgment was accompanied by a transcript of testimony from the previous trial concerning meetings of the investment committee in which members of the committee had commented, *inter alia,* that the interest rate on the proposed loan to plaintiff was less than the cost of money to the Trust, that the loan might appear speculative to the banks and that the banks would not look favorably on the Trust's commitment to plaintiff. The testimony was that the committee had voted to disapprove the proposed zone change application because the Trust had expected a more substantial proportion of commercial uses and because plaintiff had not presented the committee with adequate figures to determine the value of the project. The record contains a letter on the Trust letterhead in which the investment committee informed plaintiff that the value of the development did not provide a sufficient margin over acquisition, financing and development costs to justify the risks involved.

Plaintiff opposed the motion for summary judgment with excerpts of depositions from the previous action and trial testimony by defendants' agents that tended to demonstrate that defendants' were concerned during this period with the shaky reputation of real estate investment trusts in general and that defendant U.S. Bancorp was decreasing its extension of credit to the Trust to protect its affiliated banks' own ratings on commercial paper. In oral argument, defendants contended that a back-up line of credit extended to the Trust was adequate to handle this entire project despite the withdrawal of short-term loans. Plaintiff's evidence indicated such back-up credit would be more expensive to the Trust, thus affecting the feasibility of the project. The record does not disclose the extent to which commercial paper credit at lower interest rates was

expected to provide the funds to the Trust for the commitment to plaintiff. An inference, however, could be drawn by a trier of fact on this record that defendants had self-serving motives, at least in part, in advising the Trust not to approve the proposed zone change application.

The trial court granted defendants' motion for summary judgment, presumably on the ground that defendants were immune from liability on the tort of interference with contract because they were, at least in part, acting in furtherance of the interests of the Trust, despite other possible motives. In so ruling, the trial court simply cited as controlling the Supreme Court's opinion in *Wampler v. Palmerton*, 250 Or 65, 439 P2d 601, *reh den* (1968).

In *Wampler*, the plaintiff brought an action against two individuals for intentional interference with the plaintiff's logging contract with a corporation. One defendant was the president, managing officer, board member and stockholder of the company; the other was employed by the company as a business advisor and was also a major unsecured creditor of the corporation and a co-signer on the performance bond of the timber purchase contract between the corporation and the government. The plaintiff alleged that the defendants were enriched through the corporation's benefiting from its breach of the contract with the plaintiff. The court held that corporate officers and employees who, in good faith, give advice to a corporation to abandon a disadvantageous contract, that is, with intent to benefit the corporation, enjoy a "privilege" or immunity from liability for inducing breach of contract. The court stated the policy behind the privilege:

"A party is usually able to abandon a disadvantageous but valid contract and be responsible for breach of contract only. Corporations would substantially be prevented from similarly abandoning disadvantageous but valid contracts, and from securing related business advice, if the officers and employees who advised and carried out the breach had to run the risk of personal responsibility in an action for interference with contract." 250 Or at 74-75.

The court held that, because the defendants' actions were "clearly" taken to benefit the corporation and the plaintiff had alleged that the defendants sought a *derivative gain*

from the improved financial condition of the corporation, the motivation attributed to the defendants established privilege and was insufficient to render them liable for the tort of interference with a contract. 250 Or at 76. *Wampler* thus presented no question of fact concerning the defendants' motives.[2]

In *Straube v. Larson,* 287 Or 357, 371, 600 P2d 371 (1979) (action against hospital employees for depriving plaintiff of hospital staff privileges), the court held that the evidence created a question of fact whether the defendants' actions were taken for the benefit of the hospital or to satisfy private grudges and that summary judgment was improper unless the privilege could be deemed an absolute one. The court concluded that an absolute privilege was improper in the context of communications made to private organizations. The court characterized the operative rule as "application of a qualified privilege, with the burden of negating this qualified privilege placed upon plaintiff as part of his affirmative case." 287 Or at 371.

In *Straube,* the factual issue of motive was presented as an "either/or" proposition. The court did not address the question posed by cases in which agents of a corporation have acted both for the interests of other principals as well as for those of the entity advised. The question of "mixed motives" in this context must be deemed an open one in Oregon law. Plaintiff urges that we adopt here the "primary motive" concept used to uphold qualified privilege in the context of defamation. *See, e.g., Schafroth v. Baker,* 276 Or 39, 56-57, 553 P2d 1046 (1976) (in slander context, the defendants' communications could

---

[2] *Wampler* contains dicta in a footnote suggesting that the privilege would be lost if the defendants acted for their personal gain in a manner not at all beneficial to the corporation:

"Contrary to the conclusion reached by us, it has been held that the existence of an ulterior or dishonest purpose will result in personal liability for the corporate representative for interference with contract even where he acts for the corporation and within the scope of his employment. Remy Beverages v. Myer, 56 NYS2d 828 (S Ct), aff'd 269 App Div 1013, 59 NYS2d 371 (1st Dept 1945). See, however, the subsequent opinion by the same judge, in which it was emphasized that the defendants in Remy Beverages acted for their personal gain in a manner which would not have been beneficial to the corporation. Ehrlich v. Alper, 145 NYS2d 252, 254 (S Ct 1955), aff'd 1 A D 2d 875, 149 NYS2d 562 (1st Dept 1956)." 250 Or at 76, n 16.

be privileged despite bad motives, if the defendants' primary purpose were proper). Prosser analogizes defamation to interference with contract, because they are "different phases of the same general wrong of depriving the plaintiff of beneficial relations with others." Prosser, Torts 926, § 129 (4th ed 1971). Although acknowledging that the few decisions addressing this question[3] have upheld the applicable privilege despite ill will toward the plaintiff if the defendant's purpose was proper, Prosser indicates, not without reservation,[4] that a primary motive test may be appropriate here:

> " * * * It may be suggested that here, as in the case of mixed motives in the exercise of a privilege in defamation and malicious prosecution, the court may well look to the predominant purpose underlying the defendant's conduct." [Footnotes omitted.] Prosser Torts 943, § 129 (4th ed 1971).

*See also* Restatement (Second) Torts, § 766, comment *j* (1979).[5]

A primary motive test to determine the privilege of one who advised an entity to breach its contracts seems

---

[3] Prosser, Torts 943, § 129, n 93 (4th ed 1971), cites the following cases:

"Lancaster v. Hamburger, 1904, 70 Ohio St. 156, 71 N.E. 289; Gregory v. Dealers' Equipment Co., 1927, 156 Tenn. 273, 300 S.W. 563; Bentley v. Teton, 1958, 19 Ill.App.2d 284, 153 N.E.2d 495; Diver v. Miller, 1929, 4 W.W.Harr., Del., 207, 148 A. 291; Stevens v. Siegel, 1963, 18 App.Div.2d 1109, 239 N.Y.S.2d 827; O'Brien v. Western Union Tel. Co., 1911, 62 Wash. 598, 114 O. 441."

[4] Prosser, Torts 943, § 129, n 94 (4th ed 1971), notes:

"One question which seems nowhere to have been considered is whether anything so intrinsically psychological as a mixed motive is really susceptible of proof. Since in many cases the defendant himself is uncertain as to his own motives, and some element of ill will is seldom absent, there is all the more reason for holding that the addition of 'malice' should not defeat the privilege."

[5] In defining the tort of intentional interference with contract, comment *j* begins by examining situations turning on motive or intent:

"The rule stated in this Section is applicable if the actor acts for the primary purpose of interfering with the performance of the contract, and also if he desires to interfere, even though he acts for some other purpose in addition."

Comment *j* goes on to define intentional interference with performance of contract quite broadly to include conduct whose primary purpose is other than to cause interference but where interference is known to be a necessary consequence.

particularly appropriate where the adviser is the agent of two different entities whose interests potentially conflict. Here, defendants are affiliated investment and banking corporations, at least one of which had a line of credit and commercial paper credit extended to the Trust. Plaintiff claims that defendants sought to terminate their involvement in real estate investment trusts during the period of this dispute over the Trust's commitment to plaintiff in order to protect their commercial paper ratings. In advising the Trust, the agents and officers of defendants held a duty toward the Trust, characterized in *Wampler* as a "duty of advice and action to the corporation." 250 Or at 74. These agents, as officers and employees of defendants, also owed a duty to protect the interests of defendants. In cases such as this, in which the potential for conflict between the interests of two principals is apparent, the principal that is advised to breach its contract is entitled to know of the benefits resulting to the other principal as a consequence of the recommended breach. In our view, such disclosure would preserve the privilege of the adviser and, thus, avoid the chilling effect referred to in *Wampler* in situations in which agents owe duties to more than one principal.

We hold that, absent full disclosure of the conflict of interest at the time the advice is given, defendants here are subject to liability for interference with the contract if plaintiff can prove that the agents' primary motive in advising the Trust to breach its agreement was to benefit defendants rather than the Trust. To hold otherwise would immunize corporate entities whose agents have given advice to breach a contract ostensibly to benefit the advisee but in reality to benefit the other principal with a conflicting interest, resulting in measurable yet unrecoverable loss to the party with whose contract they have interfered.

■  We agree with plaintiff that motive is not generally an appropriate factual issue to be disposed of by summary judgment. *See, e.g., Morrison v. Nissan Co., Ltd.*, 601 F2d 139, 141 (4th Cir 1979) (summary judgment inappropriate in antitrust case where intent of parties as to ambiguous contract is an issue to be resolved from inferences drawn from undisputed facts). Having decided that the factual issue here is defendants' agents' *primary*

motive, we hold that the trial court erred in granting summary judgment for defendants on the basis of *Wampler,* because a factual issue remains as to defendants' agents' primary motive in advising the Trust to deny approval of the proposed zoning application.

Defendants maintain that plaintiff is estopped to recover on the first cause of action because of the position he took in the prior litigation and what was necessarily determined therein. Insofar as we understand the argument, defendants' theory starts with the obvious proposition that the jury in the first litigation concluded that the Trust breached its contract, that is, denied approval as to the form of the zone change application for reasons other than those for which it was entitled to do so. Defendants argue that plaintiff's claim in *this* action is based on defendants' representations to the Trust concerning reasons for which the Trust would have been entitled to deny approval of the proposed zone change application. Defendants contend, therefore, that the representations alleged here could not have *effectively* caused the breach found in the first action. The short answer is that plaintiff's specific allegations of representations do not necessarily correspond to the reasons for which the Trust was entitled to deny approval of the application. Plaintiff alleges that defendants falsely advised the Trust that: (1) certain economic feasibility data was required to be furnished along with the application; (2) the Trust had the absolute right to refuse approval as to the form of the proposed application; and (3) the form of plaintiff's application was not proper under terms of the agreement between the Trust and plaintiff. Defendants seem to contend that those representations furnished reasons entitling the Trust to deny approval of the zone change application without liability for breach of contract. But that contention would itself appear to involve an issue of fact that must be resolved in this proceeding.

■ The disputed allegations are not inconsistent either with plaintiff's position at the prior trial or with what the jury there necessarily found. Plaintiff's theory here is that defendants, in bad faith, or for ulterior motives, induced the Trust to deny approval of the zoning application. In the first action, plaintiff argued, and the jury necessarily

found, that that denial (however induced or achieved) constituted a breach of contract. Inasmuch as the jury in the first action was instructed that the state of mind of these defendants was irrelevant to the Trust's breach,[6] defendants' motives were not necessarily litigated in the prior action. We conclude defendants' estoppel argument has no merit.

In the second assignment, plaintiff contends the trial court erred in dismissing the second cause of action for misrepresentation. Defendants note that the original complaint, filed June 21, 1976, contained allegations as to defendants' misrepresentations in 1975 *to the Trust.* A fourth amended complaint, filed in May, 1978, after the two-year statute of limitations period had expired (ORS 12.220(1)), for the first time made additional allegations as to defendants' misrepresentations to plaintiff during the same period: that the Trust would approve the proposed zoning application if submitted in a form previously proposed by plaintiff to defendants. The fifth (and last) amended complaint added the following:

"In truth, defendants had reason to believe that US BanTrust would not approve a zone change application in the proposed form and anticipated that US BanTrust would not so approve."

Significantly, plaintiff did not allege any new damages arising out of the second "cause of action."

Although the misrepresentation to plaintiff was denominated in the fifth amended complaint and in the brief as a second and separate "cause of action," during oral argument counsel for plaintiff characterized the second cause of action as more in the nature of another count of the underlying cause of action for intentional interference with plaintiff's contract with the Trust. We agree with that characterization. The alleged material misrepresentations to plaintiff would, if established, constitute intentional interference with the contract on plaintiff's end of the contractual relationship by causing plaintiff to tender improper performance. *See* Restatement (Second) Torts, §

---

[6] The jury was also instructed that defendants' knowledge was to be imputed to the Trust, as the Trust itself had no staff. The instruction on state of mind, however, effectively removed defendants' motives from the case.

766A (1971).[7] The alleged misrepresentations to the Trust would constitute interference on defendants' end of the contractual relationship by inducing the Trust's breach. *See* Restatement (Second) Torts, § 766 (1971).[8] The single cause of action here arises from the alleged interference with a contractual relationship achieved by misrepresentations to *either* of the contracting parties — interference that is compensable by a unitary measure of damages. Plaintiff has alleged no separate cause of action for the misrepresentation. The issue then becomes whether the allegations of misrepresentations to plaintiff should be permitted to remain in the action.

■ Whether the allegations added after expiration of the limitations period relate back to the filing of the original complaint is determined by ORCP 23C, effective during the pendency of this action:

> "Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. * * *"

The alleged misrepresentations to plaintiff arise out of the same transaction and course of conduct attempted to be set forth in the original pleading, that is, intentional interference with the contract between plaintiff and the Trust. The trial court erred insofar as its dismissal of the "second cause of action" had the effect of striking plaintiff's allegations of misrepresentations to plaintiff.

Reversed and remanded.

---

[7] Restatement (Second) Torts, § 766A (1971) provides:

"One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person, by preventing the other from performing the contract or causing his performance to be more expensive or burdensome, is subject to liability to the other for the pecuniary loss resulting to him."

[8] Restatement (Second) Torts, § 766 (1971) provides:

"One who intentionally and improperly interferes with the performance of a contract (except a contract to marry) between another and a third person by inducing or otherwise causing the third person not to perform the contract, is subject to liability to the other for the pecuniary loss resulting to the other from the failure of the third person to perform the contract."

**WARDEN, J.,** concurring in part and dissenting in part.

I agree with the conclusion of the majority that the trial court erred in granting summary judgment as to plaintiff's first cause of action. I, therefore, concur in that respect.

I disagree, however, with the conclusion of the majority that the trial court erred in dismissing plaintiff's second cause of action. Plaintiff's complaint was not amended to include the second cause of action until after the running of the statute limiting the time for bringing an action. Therefore, the second cause of action was barred.

The majority misapplies ORCP 23C. The pertinent part of the rule provides:

> "Whenever the *claim* or defense asserted in the amended pleading arose out of the *conduct, transaction, or occurrence* set forth or attempted to be set forth in the original pleading, the amended pleading relates back to the date of the original pleading. * * *" (Emphasis added.)

Plaintiff's claim in the second cause of action was first asserted in his fourth amended complaint. It was a claim for intentional interference with a business relationship, as was the claim set out in his original complaint. The claim, however, did not arise out of the conduct, transaction, or occurrence set forth in the original pleading. The original pleading alleged conduct of defendants that consisted of false representations to, and concealment of information from US BanTrust. Plaintiff's second cause of action alleged conduct of defendants directed toward himself only. Although, as the majority points out, in both causes of action plaintiff's claim was for intentional interference with a business relationship, that asserted in the second cause of action did not arise out of the conduct set forth in the original pleading. Therefore, the amendment, the second cause of action, does not relate back to the date of the original pleading.

The majority appears to make much of calling the amendment a new count, rather than a new cause of action, even though the plaintiff himself twice pleaded it as a cause of action and continued to refer to it as a cause of

action right up until argument in this court. It is of no moment whether the allegations which were first introduced in plaintiff's fourth amended complaint are called a count or a cause of action. They were an amendment of his pleading.

I would affirm the trial court's dismissal of plaintiff's second cause of action.