**Graham HOLLOWAY, Petitioner,**

v.

**Rick SKINNER and Alvin Ord's, Inc., Respondents.**

No. D–4374.

Supreme Court of Texas.

Argued May 4, 1994.

Decided May 11, 1995.

Rehearing Overruled June 8, 1995.

Michael Scaperlanda, Norman, OK, for petitioner.

Robert F. Neal, Austin, for respondents.

CORNYN, Justice, delivered the opinion of the Court, in which PHILLIPS, Chief Justice, GONZALEZ, Justice, GAMMAGE, Justice, and SPECTOR, Justice, join.

In this case, we consider whether Graham Holloway, the president, director, and largest shareholder of Holligan, Inc. (the Corporation), can be held liable for tortiously interfering with a contract between the Corporation and a third party. Rick Skinner and Alvin Ord's, Inc. (collectively, Skinner), sued Holloway for, among other things, tortious interference with a contract between the Corporation and Skinner. The trial court rendered judgment on the jury's verdict against Holloway on the tortious interference claim. The court of appeals affirmed. 860 S.W.2d 217. Because Skinner presented no evidence that Holloway, *in his personal capacity*, willfully or intentionally interfered with the contract, we reverse the judgment of the court of appeals and render judgment that Skinner take nothing.

Skinner previously owned a sandwich shop franchise, Alvin Ord's. In 1981, Holloway and his father-in-law, Tom Culligan, approached Skinner about purchasing the franchise. Rather than negotiating an outright purchase, the parties settled upon a plan of joint ownership and agreed to form a corporation, Holligan, Inc., to control their holdings. Skinner contributed to the Corporation his company-owned Alvin Ord's stores, franchise agreements, the Alvin Ord's trade name, and trade secrets. Holloway and Culligan contributed their management services and additional capital. As part of this agreement, Skinner received a $63,000 promissory note from the Corporation, a six percent royalty on gross receipts from Alvin Ord's stores, stock, and a managerial position in the Corporation.[1] Holloway served as the Corporation's president.

Between 1981 and 1984, the Corporation failed to make some payments due under the note and royalty agreement. In 1984, Skinner left his position at the Corporation because of a deteriorating personal relationship with Holloway. The Corporation defaulted entirely on its obligations to him in July 1985.

Skinner successfully sued the Corporation for breach of its obligations under the note and royalty agreement, but the Corporation filed for bankruptcy, and that judgment remains unsatisfied. Skinner then filed the suit against Holloway, claiming, among other things, that he tortiously interfered with the note and royalty agreement by inducing the Corporation to default on its obligations. In accord with the jury's verdict, the trial court rendered judgment against Holloway on the tortious interference claim. The court of appeals affirmed, holding that Holloway's status as a corporate agent did not bar Skinner's claim of tortious interference with the Corporation's contract, that some evidence supported the jury's finding that Holloway induced a breach of the contract, and that Holloway had not conclusively establish that his conduct was legally justified.

I.

Texas jurisprudence has long recognized that a party to a contract has a cause of

---

1. During the negotiations, Skinner unsuccessfully attempted to obtain personal guarantees from Holloway and Culligan on the Corporation's obligations to Skinner.

action for tortious interference against any third person (a stranger to the contract) who wrongly induces another contracting party to breach the contract. *See generally Raymond v. Yarrington,* 96 Tex. 443, 73 S.W. 800, 802–04 (Tex.1903) (reciting the history of this cause of action and recognizing its viability in Texas). By definition, the person who induces the breach cannot be a contracting party. Were we to recognize the tortious interference claim when this identity of interest exists, any party who breaches a contract could be said to have induced his own breach and would therefore be liable for tortious interference. Such logic would convert every breach of contract claim into a tort claim. In most cases, however, this qualification is not an issue because the alleged tortfeasor is clearly a stranger to the contract.

Here, the act of interference was allegedly committed by an individual who was also the lawful representative of the contracting party. Such a case tests the limits of the general rule barring tortious interference claims when the inducing and the breaching party are one and the same. *Cf. Copperweld Corp. v. Independence Tube Co.,* 467 U.S. 752, 771–72, 104 S.Ct. 2731, 2741–42, 81 L.Ed.2d 628 (1984) (holding that the identical economic interests of a parent corporation and its wholly-owned subsidiary render them legally incapable of conspiring with one another); *Deauville Corp. v. Federated Dep't Stores,* 756 F.2d 1183, 1196–97 (5th Cir.1985) (holding that a parent corporation cannot be liable for tortious interference with prospective business relationships of its wholly-owned subsidiary). The inducement and the breach were allegedly committed when the same person was functioning in distinctly different legal capacities.

■ Corporations, by their very nature, cannot function without human agents. As a general rule, the actions of a corporate agent on behalf of the corporation are deemed the corporation's acts. *See, e.g., Terry v. Zachry,* 272 S.W.2d 157, 160 (Tex.Civ.App.—San Antonio 1954, writ ref'd n.r.e.), *disap-*

*proved on other grounds in Sterner v. Marathon Oil Co.,* 767 S.W.2d 686, 690 (Tex.1989).[2] For this reason, we have held that "an officer or director [of a corporation] may not be held liable in damages for inducing the corporation to violate a contractual obligation, provided that the officer or director acts in good faith and believes that what he does is for the best interest of the corporation." *Maxey v. Citizen's Nat'l Bank,* 507 S.W.2d 722, 726 (Tex.1974). "Even the officers and directors of an ordinary corporation, while acting as such, are not personally liable even though they recommend a breach of a valid contract." *Id.* at 725 (quoting *Russell v. Edgewood Indep. Sch. Dist.,* 406 S.W.2d 249, 252 (Tex.Civ.App.—San Antonio 1966, writ ref'd n.r.e.)). The reason for this rule has been explained as follows:

> Doing business through corporate structures is a recognized and necessary incident of business life. A party is usually able to abandon a disadvantageous but valid contract and be responsible for breach of contract only. Corporations would substantially be prevented from similarly abandoning disadvantageous but valid contracts, and from securing related business advice, if the officers and employees who advised and carried out the breach had to run the risk of personal responsibility in an action for personal interference with the contract.

*Wampler v. Palmerton,* 250 Or. 65, 439 P.2d 601, 606 (1968). Based on this same rationale, we have emphasized that "a clear distinction should be maintained between individual liability as distinguished from that of the corporate employer." *See Maxey,* 507 S.W.2d at 726.

■ The elements of a cause of action for tortious interference with a contract are: (1) the existence of a contract subject to interference, (2) the occurrence of an act of interference that was willful and intentional, (3) the act was a proximate cause of the plaintiff's damage, and (4) actual damage or loss

---

2. *Sterner* held that legal justification was an affirmative defense and disapproved of *Terry* only to the extent that *Terry* held that the burden of proof was on the plaintiff. *Sterner,* 767 S.W.2d at 690. Because we hold that there is no evidence of actionable interference under the facts of this case, we do not reach the question of whether Holloway conclusively established his affirmative defense of legal justification.

occurred. *Browning–Ferris Indus. v. Reyna*, 865 S.W.2d 925, 926 (Tex.1993); *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 939 (Tex.1991). The second element of this cause of action is of particular importance when the defendant serves the dual roles of the corporate agent and the third party who allegedly induces the corporation's breach. To establish a prima facie case under such circumstances, the alleged act of interference must be performed in furtherance of the defendant's personal interests so as to preserve the logically necessary rule that a party cannot tortiously interfere with its own contract.

▆▆▆▆ We hold that to meet this burden in a case of this nature, the plaintiff must show that the defendant acted in a fashion so contrary to the corporation's best interests that his actions could only have been motivated by personal interests.[3] *See* Thomas G. Fischer, Annotation, *Liability of Corporate Director, Officer, or Employee for Tortious Interference with Corporation's Contract with Another*, 72 A.L.R.4TH 492, 527–30 (1989) (cases cited). Inasmuch as it is the duty of corporate officers to protect the interests of the corporation, *Southwestern States Oil & Gas Co. v. Sovereign Resources, Inc.*, 365 S.W.2d 417, 422 (Tex.Civ.App.—Dallas 1963, writ ref'd n.r.e.), the mere existence of a personal stake in the outcome, especially when any personal benefit is derivative of the improved financial condition of the corporation or consists of the continued entitlement to draw a salary, cannot alone constitute proof that the defendant committed an act of willful or intentional interference. *See* 3 LENORE M. ZAJDEL, FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 1001 (perm.rev.ed.1986); *see also Welch v. Bancorp Management Advisors, Inc.*, 296 Or. 208, 675 P.2d 172, 178 (1983) (holding that even a corporate agent's "mixed motives" to benefit himself as well as the corporation are insufficient to establish liability); RESTATEMENT OF THE LAW (SECOND) OF TORTS, § 772 cmt. c (1979) (stating that by

itself, "it is immaterial that the actor also profits by the advice or that he dislikes that third party and takes pleasure in the harm caused to him by the advice"). Were this not the rule, virtually every failure to pay a corporate debt would constitute a prima facie case of tortious interference against the corporate officer who decided not to pay the debt.

The dissent suggests that we have shifted the burden of proof on the affirmative defense of legal justification. We disagree. Although we acknowledge that whether to treat this issue as part of the defendant's burden of proof or to place the burden on the plaintiff is a close question, on balance we conclude that the burden to prove that an agent committed an act of interference for reasons personal to the agent is better placed on the plaintiff. *See, e.g., Wampler*, 439 P.2d at 606 (stating that this issue "might well be viewed as a lack of duty of non-interference on the part of the corporate agent"). Once that burden is met, liability for tortious interference with contract is established unless the corporate agent establishes the affirmative defense of legal justification.

## II.

Holloway's arguments boil down to two contentions: that there is not legally sufficient evidence to support the jury's finding that he tortiously interfered with Skinner's contractual agreement with the Corporation, and, alternatively, that he has conclusively proven the affirmative defense of legal justification. Because we agree that Skinner did not meet his burden of proving each element of tortious interference, we need not address Holloway's affirmative defense.

To succeed on the legal insufficiency challenge, Holloway must show that there is no more than a scintilla of evidence to support one or more of the elements of tortious interference. *See* Robert W. Calvert, *"No Evidence" and "Insufficient Evidence" Points of Error*, 38 TEX.L.REV. 361, 363 (1960). In

---

**3.** Our holding today is consistent with the standard we enunciated in *Maxey:* that to prevail the defendant must act in good faith and believe the act to be in the best interest of the corporation. *Maxey*, 507 S.W.2d at 726. If the defendant acts in a fashion so contrary to the corporation's best interests that his actions could only have been motivated by personal interests, he by definition does not act in good faith.

reviewing the record in this case, we conclude that there is no evidence of the second element of tortious interference: a willful or intentional act of interference.

■ Much of the argument in this appeal has concentrated on the legal effect of Holloway's corporate role. Holloway asserts that a corporate representative who controls the corporation cannot interfere with the corporation's contracts because the representative is legally indistinguishable from the corporation. The record establishes, however, that Holloway personally owned only forty percent of the stock in the Corporation. Skinner argues that this lack of complete identity of interests between the Corporation and Holloway permits the jury to infer that Holloway interfered with the contract in question.

This argument primarily addresses the first element of tortious interference: whether there was a contract subject to interference. When there is a complete identity of interests, there can be no interference as a matter of law. Here, however, because Holloway's interests as a minority shareholder and those of the Corporation are not of necessity identical, we hold that Holloway could have acted in a manner that served his interests at the expense of the other shareholders. Thus, the contract at issue here was subject to interference, despite the substantial alignment of his interests with those of the Corporation.

■ In his concurring opinion, JUSTICE HECHT states that Holloway's authority to act on behalf of the Corporation is the dispositive inquiry. We disagree. JUSTICE HECHT's view represents a substantial departure from Texas law[4] and would effectively abrogate the tortious interference cause of action and confer blanket immunity anytime an agent acts within the scope of the agent's general authority and regardless of whether the agent is exclusively pursuing his personal interests. In this case, Skinner does not even claim that Holloway was not authorized by the Corporation to perform all of the actions of which Skinner complains. Still, we can conceive of other scenarios in which a corporate agent, while acting within the scope of his general authority, might pursue purely selfish interests in inducing a breach of the corporation's contract. Cf. *Celtic Life Ins. Co. v. Coats,* 885 S.W.2d 96, 99 (Tex. 1994) (holding that "the proper question is not whether the principal authorized the specific wrongful act," but "whether the agent was acting within the scope of the agency relationship"). An agent's interests and those of the corporation are not always monolithic, especially when, as here, the agent is a minority shareholder. Accordingly, we reject a "scope of authority"[5] test and hold that the ultimate issue in a case of this nature is whether the corporation's agent acted in a manner so contrary to the corporation's interests that the agent could only have been motivated by personal interest.

On the other hand, the rule JUSTICE HECHT proposes would eliminate any possibility (by eliminating any fact issue) that an agent acting within the general scope of his authority on behalf of the corporation might be called to account for tortious interference with his principal's contracts. We decline to depart from established Texas law on this issue.

4. JUSTICE HECHT cites one case, in addition to the present one, to illustrate the supposed flaws in the Court's rule, *infra,* 898 S.W.2d at 799; *Morgan Stanley & Co. v. Texas Oil Co.,* —— S.W.2d —— (Tex.App.—Houston [14th Dist.] 1994, writ denied). These cases, he asserts, demonstrate that the "the Court's rule places an agent or employee in the awkward position of answering not only to his principal but to third parties with whom the principal is dealing." *Infra,* 898 S.W.2d at 800. But under Texas law, a corporate agent is already answerable to the corporation for breach of fiduciary duties, *see, e.g., International Bankers Life Ins. Co. v. Holloway,* 368 S.W.2d 567, 576 (Tex.1963), *and* to third parties for the tort of wrongfully inducing the breach of a corporate contract. *See, e.g., Maxey,* 507 S.W.2d at 726 (holding that officer or director "may not be held liable, *provided* that the officer or director acts in good faith and believes that what he does is for the best interest of the corporation.") (citations omitted) (emphasis added).

5. Conversely, when the agent seeks to establish the affirmative defense of legal justification under these circumstances, the agent must necessarily prove that his acts were performed within the scope of his authority and on behalf of the corporation. *See Sterner,* 767 S.W.2d at 691 (holding that affirmative defense of legal justification requires a showing that (1) inducement of the breach occurred in the bona fide exercise of the actor's own rights, or (2) that the actor had an equal or superior right in the subject matter when compared to that of the plaintiff).

The alignment of Holloway's interests with those of the Corporation is also relevant to the second element of tortious interference: whether the agent of the corporation committed a willful and intentional act of interference. The plaintiff must prove more than the fact that the defendant benefitted from the breach. The plaintiff must prove that the defendant acted willfully or intentionally to serve the defendant's personal interests at the expense of the corporation. In this case, to support the jury's finding of tortious interference, there must be evidence that Holloway personally benefitted from decisions that were inconsistent with his duty to the Corporation, and that were directly connected to the Corporation's decision not to pay Skinner.

The testimony at trial, as well as audit reports and bankruptcy records, establish the following uncontroverted facts. The Corporation suffered severe cash flow problems and had current liabilities that far exceeded its current assets at the time the breach occurred. These financial difficulties caused the Corporation to fall behind on its royalty payments to Skinner during the period from 1981 to 1984, and to cease making payments altogether in 1985. The salary paid to Holloway was originally $36,000, but was reduced to $24,000 prior to 1984 due to cash flow problems. During the 1984–85 fiscal year, Holloway raised his salary to $33,750. During the next year, his salary was increased to $45,000. The increase in Holloway's salary was offset by decreases in other salaries paid as the Corporation trimmed the size of its work force, and there is no evidence that these actions were unreasonable. Holloway further testified that, in his capacity as a corporate officer, he was required to prioritize between competing claims because the Corporation had insufficient cash flow to meet all obligations when they came due.

On this record, we conclude that there is no evidence that the decision to breach the contract was so contrary to the Corporation's best interests that it could only have been motivated by the pursuit of Holloway's personal interests. As we have already noted, a personal benefit limited to the continued entitlement to draw a salary or derivative of the improved financial condition of the corporation does not raise a triable issue of fact in this type of tortious interference case.

Because Skinner failed to introduce any evidence tending to prove that Holloway committed an act that was so contrary to the Corporation's best interests that it could only have been motivated by the pursuit of his personal interests, there is no evidence that Holloway tortiously interfered with Skinner's contractual rights with the Corporation. Accordingly, we reverse the judgment of the court of appeals and render judgment that Skinner take nothing on his tortious interference claim.

HECHT, Justice, joined by OWEN, Justice, filed an opinion concurring in the judgment only.

The rule the Court adopts today exposes all agents, including corporate officers, directors and employees, to increased personal liability for the decisions they make on behalf of their principals. Even when an employer, corporation or other principal authorizes its agent to act on its behalf with a third party, the Court holds that the agent personally— not just the principal—may be liable to the third party. While the Court correctly relieves the corporate officer in this case of the judgment against him, it enlarges the threat of liability to all others in his position. The better rule, in my view, is that an agent is liable to a third party for tortious interference with a contract between that party and the agent's principal if the agent's conduct exceeded his authority.

Holligan, Inc. contracted to pay Rick Skinner $63,000 plus a percentage of its receipts. When it encountered financial difficulties, Holligan defaulted on its obligations to Skinner and eventually declared bankruptcy. Skinner sued Holligan and obtained a judgment against it which was never paid. Skinner then sued Holligan's president, Graham Holloway, who was also a director of the corporation and owned more than forty percent of its stock. Holloway was the person who decided for Holligan what bills to try to pay and what bills would have to go unpaid for lack of funds, and consequently he made the decision for Holligan to discontinue pay-

ments to Skinner. Although Skinner had failed to obtain Holloway's personal guaranty of Holligan's obligations to him, Skinner claimed that Holloway, by making decisions for Holligan, tortiously interfered with the contracts between Holligan and Skinner. Skinner complained that Holloway benefited from Holligan's default because his annual salary was raised from $24,000 the year before the breach, to $33,750 the year of the breach, and to $45,000 the following year. The trial court rendered judgment on a jury verdict against Holloway for $78,631.61 in actual damages and $100,000 in punitive damages. The court of appeals affirmed. 860 S.W.2d 217.

This Court reverses the judgment against Holloway. The basis for its decision is its holding that an agent interferes with a contract between his principal and a third person only when he acts in a way that is both contrary to his principal's interests and in furtherance of his own. The Court emphasizes the importance of both of these elements. An agent who acts to better his own interests cannot be liable for tortious interference if his actions are also in his principal's best interests. Were it otherwise, an agent would be exposed to liability whenever his decisions to benefit his principal also happened to benefit himself. In this case, for example, evidence that Holloway's salary was raised to reward him for minimizing Holligan's obligations would support the trial court's judgment.

While I agree with the Court that there is no liability for tortious interference in this case, I believe the rule it adopts for reaching that conclusion is flawed. It allows a third party to challenge whether an agent's actions were in his principal's best interests and to obtain a factual determination that they were not, irrespective of what the principal thinks. This result of the Court's rule must be stressed. The rule allows a third party to show that an agent's conduct was contrary to his principal's interest, even if the principal asserts the opposite position, and certainly if the principal takes no position on the controversy at all. Further, this showing may be made with the benefit of hindsight, so that an agent is second-guessed about whether his

decision really benefited his principal or not. I do not believe the law should burden an agent with this potential for liability to third parties, certainly not when his principal has no complaint.

This case illustrates the problem with the Court's approach. There is no evidence that *Holligan* has ever taken the position—through its officers, directors, shareholders or employees—that Holloway failed to act in its best interest. Yet Skinner does take this position. In so doing, of course, Skinner is not trying to advance the interests of Holligan or its owners; he is advancing his own interests. Skinner contends that Holloway used the money Holligan saved by not paying Skinner to raise his own salary. The Court's weak response to this contention is that Holloway's raises did not coincide exactly with Holligan's default, and did not equal the money withheld from Skinner. The Court leaves the distinct impression that but for these two minor factual problems, Skinner would have a good case. To the Court's pronouncement that there is no evidence Holloway acted contrary to Holligan's best interests, Skinner might respond at least that Holloway got the corporation sued. The point is this: under the Court's rule, Skinner can argue that Holloway did not act in Holligan's interests when Skinner does not share those interests and when Holligan itself has no complaint, even though it was more directly affected by Holloway's decisions than Skinner was.

Another illustration of the flaw in the Court's rule is afforded by *Morgan Stanley & Co. v. Texas Oil Co.*, —— S.W.2d —— (Tex.App.—Houston [14th Dist.] 1994, writ denied), a case involving tortious interference with prospective business relations, in which the Court denies the application for writ of error contemporaneously with today's decision. There, Tenneco hired Morgan Stanley to sell Tenneco's wholly-owned subsidiary, Houston Oil and Minerals. Texas Oil made an offer to buy Houston Oil and Minerals, and indicated that it would increase its offer if necessary. When Tenneco decided to sell Houston Oil and Minerals to Seagull instead, Texas Oil made a higher offer, which Tenneco rejected. Texas Oil then sued Tenneco,

Morgan Stanley and Seagull, claiming that Morgan Stanley tortiously interfered with its prospective contract with Tenneco by convincing Tenneco to sell to Seagull. Texas Oil asserts that Morgan Stanley was motivated by the hope of doing more business with Seagull than it would have done with Texas Oil. Morgan Stanley, in its motion for summary judgment, averred that it acted at all times in the best interests of its principal, Tenneco. Texas Oil countered that an agent's interference is not privileged when the interferor acts, "not to further the principal's business, but primarily to further its own interests or out of malice." The trial court granted Morgan Stanley summary judgment, but the court of appeals reversed, holding that a fact issue subsisted regarding whether Morgan Stanley acted in good faith and in Tenneco's best interests. The court reached this conclusion despite the absence of any complaint by Tenneco about Morgan Stanley's conduct.

This Court's denial of Morgan Stanley's application for writ of error is consistent with its decision in the present case. Although there is no question that Morgan Stanley acted at all times within the course and scope of its authority from Tenneco, its principal, and although Tenneco does not complain of any of Morgan Stanley's actions, Texas Oil can recover damages against Morgan Stanley if it can persuade a jury that Morgan Stanley acted in its own best interests and not Tenneco's. The Court's rule allows Texas Oil to mutate its breach of contract claim against Tenneco into a tort claim against Morgan Stanley, and to recover not only contract damages but tort damages, including punitive damages.

These two cases show how the Court's rule places an agent or employee in the awkward position of answering not only to his principal but to third parties with whom the principal is dealing. The Court misses the whole point when it asserts that an agent must account to its principal for its behavior and may also be liable to a third party for tortious interference. *Ante* at 797, n. 4. The issue is not whether an agent *can* be liable for tortious interference, but what must be proved to establish such liability. The Court's stan-dard of proof clearly imposes a greater burden on agents than the standard I would adopt. The effect of the Court's rule is to increase the agent's exposure to personal liability for his principal's breaches and allow recovery of tort damages when a claimant would otherwise be limited to contract damages. In the present case, for example, Skinner is attempting by this suit for tortious interference to obtain what amounts to Holloway's personal guarantee of Holligan's obligations, something Skinner could not obtain by negotiation. Holloway would have been better off if he had personally guaranteed Holligan's note to Skinner: at least then he would not be liable for punitive damages. An action for tortious interference should not be used as an end run around bars to personal liability, or as a means of recasting a breach of contract as a tort to escape the limits on contractual recovery.

As the Court recognizes, a person cannot interfere with his own contract. When a person is authorized to act for another, his action's are the other's. In my view, an agent authorized to cause his principal to terminate a contract should not be liable for tortious interference when that decision turns out to be in the agent's best interests and not the principal's; he should be liable only if he acted outside his authority. The Court seems to fear that this rule would shield agents in circumstances when they should not be free of responsibility, but it cannot even imagine a single example. If there are any, they certainly do not raise the same threats as are raised by the flaws in the Court's rule.

This emphasis on whether the agent was acting within the scope of his authority is consistent with the Court's discussion in *Maxey v. Citizens National Bank,* 507 S.W.2d 722 (Tex.1974), in which we concluded that the duties a bank owed the party with which it contracted were not shared by the bank's employees. We cited several cases concerning an agent's liability for tortious interference with a contract between his principal and a third party. One, *Russell v. Edgewood Independent School District,* 406 S.W.2d 249 (Tex.Civ.App.—San Antonio 1966, writ ref'd n.r.e.), held that even assum-

ing that a school district breached its contract with the plaintiff as a result of the school superintendent's advice and direction, the superintendent was not individually liable. The *Maxey* Court quoted from *Russell* with approval: " 'Even the officers and directors of an ordinary corporation, while acting as such, are not personally liable even though they recommend a breach of a valid contract.' " 507 S.W.2d at 725 (citations omitted). *Maxey* also quoted from *Fletcher's Cyclopedia of Corporations* as follows:

"In so immunizing corporate directors from personal liability the law has proceeded on the theory that in so acting they are but the agents of the corporation and that the breach is that of the corporation, and hence it alone is answerable therefore, and, further, that to hold otherwise would tend to hinder directors of a corporation from acting on their judgment for the interest of their corporation and that they should be left free from possible liability of that kind."

*Maxey*, 507 S.W.2d at 726 (citing 3 WILLIAM M. FLETCHER, FLETCHER CYCLOPEDIA OF THE LAW OF PRIVATE CORPORATIONS § 1001 (perm. ed.)).

The cases cited in *Maxey* properly focus on whether the agent was acting within the scope of his authority. In *Southwestern States Oil & Gas Co. v. Sovereign Resources, Inc.,* 365 S.W.2d 417, 422 (Tex.Civ.App.— Dallas 1963, writ ref'd n.r.e.), the court briefly explained that the corporation's president and a director were "not mere interlopers" and were not to be considered third parties who had no legal interest in the alleged contract: "[i]t is not shown that in any way they went beyond their powers or authority as officer and director of their corporation. It was their duty to protect the interests of the corporation. There is no evidence of fraud on their part." Thus, they could not be held individually liable for causing the corporation to refuse to consummate the deal.

*Maxey* cites another case, *Terry v. Zachry,* 272 S.W.2d 157 (Tex.Civ.App.—San Antonio 1954, writ ref'd n.r.e.) (Pope, J.) (disapproved only insofar as it characterized justification as an element of plaintiff's case in *Sterner v. Marathon,* 767 S.W.2d 686 (Tex.1989)), in which even actual malice was apparently deemed insufficient to subject a corporate agent acting within his authority to individual liability for interfering with his principal's contract. The court reasoned:

An arbitrary refusal to pay an unliquidated and disputed claim is not the basis for a suit for malicious defense of a suit. Especially is this true when the debtor is solvent. Nor does the malicious insistence by a third person that an unliquidated and disputed or doubtful claim be contested, constitute an actionable cause. Such conduct is justified.

\*     \*     \*     \*     \*     \*

Were the rule otherwise, an officer of a corporation would induce a corporate officer to resist a claim at the risk of invoking a personal action unless the corporation was absolutely correct. A wilful refusal to pay an unliquidated claim is not the basis for a separate and independent suit against the corporate officers who induced such action. 62 C.J., Torts, § 57, 86 C.J.S., Torts § 45; 30 Am.Jur., Interference, § 28, states the rule even more broadly: "It has been held, for example, that notice by a third person to a debtor not to pay his creditor by reason of which the latter is compelled to sue to recover the sum due him does not constitute sufficient ground to support an action for damages even though such notice is given maliciously. The interest on the debt is held to be compensation for the delay in payment."

272 S.W.2d at 159–60 (citations omitted). In *Terry,* the court noted that the general rule was subject to an exception for corporate officers, quoting authority that a servant who causes a breach of his master's contract with a third person is not a stranger, but the alter ego of his master: his acts are in law the acts of his employer, so that it is the master himself, by his agent, breaking the contract. *Id.* at 160. For this reason, an action against the agent fails just as an action would fail against the master.

More recent Texas cases, although not actually assessing liability against a corporate agent individually, recognize the possibility

that agents can be liable for tortiously inducing a breach if, for example, they act outside the scope of their agency. *See, e.g., John Masek Corp. v. Davis,* 848 S.W.2d 170, 175 (Tex.App.—Houston [1st Dist.] 1992, writ denied) (affirming judgment for the son-in-law of an individual who controlled a withdrawing corporate partner, concluding that there was no evidence the son-in-law was anything other than an agent); *Victor M. Solis Underground Util. & Paving Co. v. City of Laredo,* 751 S.W.2d 532, 535 (Tex.App.—San Antonio 1988, writ denied); *Gonzalez v. Gutierrez,* 694 S.W.2d 384, 388 (Tex.App.—San Antonio 1985, no writ) (reversing judgment because there was no showing that the defendant airport director's actions went beyond the scope of his authority as an agent of the city, and because the city's airport committee and city council were not obliged to accept director's recommendations). In this same context, one case explained that an "agent does not interfere with his principal's business so long as he acts within the agency's scope, rather than pursues purely personal objectives." *See American Medical Int'l, Inc. v. Giurintano,* 821 S.W.2d 331, 335–36 (Tex.App.—Houston [14th Dist.] 1991, no writ) (an agent is merely the alter ego of his principal, and their financial interest is the same).

Only one Texas case suggests that "malice" is sufficient to make an agent liable for tortiously interfering with his principal's contract. In *Eloise Bauer & Associates, Inc. v. Electronic Realty Associates, Inc.,* 621 S.W.2d 200, 203–04 (Tex.Civ.App.—Texarkana 1981, writ ref'd n.r.e.), the court held that the trial court erred in instructing that interference was privileged as long as it was in the course and scope of employment, since the jury could have believed, from the evidence, that the interferor acted with malice, based solely on his own pecuniary interest, or interests other than his employer's. This court simply misunderstood the applicable standard, which is, that an agent is protected not only if he is acting within the scope of his actual authority, but also if he in good faith believes he is acting within the scope of his authority. *See Terry v. Zachry,* 272 S.W.2d at 159–60.

As this review of the cases demonstrates, a rule based upon the scope of the agent's authority is hardly a departure from established Texas law, as the Court contends. *Ante* at 797, n. 4. The rule I propose and the one adopted by the Court will often yield the same result. My concern, however, is for those cases when liability will be unjustly imposed on an agent who always acted within the scope of his authority, and for the increased burden the Court places on such agents to avoid liability.

The rule I propose is supported by caselaw outside Texas. In *Wampler v. Palmerton,* 250 Or. 65, 439 P.2d 601 (1968), the court noted that other courts had tended to shield corporate employees from liability for inducing breach of the corporate contract, often stating that they are not liable if the action was taken in "good faith" and for the benefit of the corporation. *Id.* 439 P.2d at 606. But the court stressed that the words "good faith" should not be employed to render a corporate officer or employee liable for engaging in morally questionable activities on behalf of his principal that nevertheless would not be tortious if he were acting for himself as the party to the contract. *Id.* at 607. A person contracting with a corporation, the Oregon court pointed out, could not reasonably have any contractual expectation that did not take into account that the corporation may be advised to breach the contract, in accordance with its interest:

> So long as the officer or employee acts within the general range of his authority to benefit the corporation, the law identifies his action with the corporation. In such a situation the officer is not liable for interfering with a contract any more than the corporation could be liable in tort for interfering with it.

*Id.*

Similar issues on whether a corporate director, officer, or employee is liable for tortiously interfering with a contract have frequently arisen in other jurisdictions. *See* Thomas G. Fischer, Annotation, *Liability of Corporate Director, Officer, or Employee for Tortious Interference with Corporation's Contract,* 72 A.L.R.4TH 492 (1989). Some states have recognized that a corporate di-

rector, officer or employee is generally not liable for tortiously interfering with a corporate contract because he is considered a party to the contract, as long as he acts to serve corporate interests, or unless his activity involves individual, separate tortious acts. Other courts have recognized that a corporate agent may be liable if he acts outside the scope of his authority, with malice, or to serve his own interests. *Id.* at 501–02. The opinions of courts in other jurisdictions present a variety of situations and judicial responses, and illustrate the problems invited by this Court's approach. A number, for example, deal with interference by a supervisor or peers of a discharged employee with the employee's formal or at-will employment contract. *See, e.g., Wagenseller v. Scottsdale Memorial Hosp.,* 147 Ariz. 370, 388–89, 710 P.2d 1025, 1043–44 (1985) (at-will employee introduced summary judgment evidence to show discharge was caused by deterioration of personal friendship); *Morriss v. Coleman Co.,* 241 Kan. 501, 738 P.2d 841 (1987) (since undisputed summary judgment evidence showed plaintiffs were considered good employees, a reasonable person could have inferred that they had been discharged because a superior disapproved of unmarried employees traveling together). The variety of situations in the caselaw demonstrates how tortious interference can expand to become the remedy of choice, displacing other actions with more limited remedies.

For these reasons I believe it is important that an action for tortious interference against an agent be limited to circumstances in which the agent has transgressed his authority. The Court's broader rule is, in my view, prone to mischief. Accordingly, I concur only in the Court's judgment.

ENOCH, Justice, concurring in the judgment.

Rick Skinner failed to present any evidence that Holloway acted outside his corporate authority in making the decisions that precipitated the corporation's breach of its agreement with Skinner. Therefore, I agree with the Court that, as a matter of law, Graham Holloway cannot be held liable for tortiously interfering with a contract between the corporation, of which he was president, and Skinner, with whom the corporation had contracted. Thus, the judgment of the court of appeals must be reversed.

To the extent the Court concludes that the plaintiff failed to show the defendant acted so contrary to the corporation's best interests that his actions could only be motivated by personal interests, I agree. 898 S.W.2d at 798. The Court is incorrect, however, in holding that such evidence is necessary to show willful and intentional interference. 898 S.W.2d at 798. Instead, such evidence is necessary to show that the agent acted as a stranger to the contract. Because of this error, I cannot join in the Court's opinion.

To the extent that JUSTICE HECHT concludes that the issue in this case is whether the action of the agent was within the scope and authority granted to it by its principal, I agree. But, I cannot agree that the scope of authority is merely a question of whether an act is explicitly authorized. Our cases have recognized that an agent must exercise corporate authority in *good faith* in order to be treated as the principal. *See Maxey v. Citizens National Bank,* 507 S.W.2d 722, 726 (Tex.1974) (an officer is not liable for inducing the corporation to breach a contract provided that the officer acts in good faith and believes what he does is for the best interest of the corporation).[1] This good faith requirement forces this Court to recognize that lack of authority may be shown where an agent acts so contrary to the corporation's best interests that his actions could only be motivated by personal interests. Because JUSTICE HECHT does not recognize the role of good faith in the agency inquiry, I cannot

1. Indeed, JUSTICE HECHT's discussion of *Morgan Stanley & Co. v. Texas Oil Co.,* ⸺ S.W.2d ⸺, 1994 WL 808432 (Tex.App.—Houston [14th Dist.] 1994, writ denied) demonstrates the vitality of the good faith requirement. *Morgan Stanley* was decided on the basis of an application of *Maxey v. Citizens National Bank,* 507 S.W.2d 722, 726 (Tex.1974) and its good faith require-ment; whether Morgan Stanley acted in good faith and in Tenneco's best interests. JUSTICE HECHT purports to agree with *Maxey* and yet ignores its good faith requirement. Neither the present case nor *Morgan Stanley* are a departure from the body of law established in prior cases like *Maxey.*

join his concurrence. Therefore, I concur in the Court's judgment and write separately.

## I.

As the Court recognizes, it is axiomatic within the context of a tortious interference with contract cause of action that a party to the contract cannot interfere with itself. *See Raymond v. Yarrington*, 73 S.W. 800, 802–04 (Tex.1903). It is the plaintiff's burden to prove that the party alleged to have interfered with a contract is not one of the contracting parties. *See Baker v. Welch*, 735 S.W.2d 548, 549 (Tex.App.—Houston [1st Dist.] 1987, writ dism'd). In the context of a contract with a corporation, the plaintiff has the burden to demonstrate that the corporate officer should not be treated as the contracting party, and instead should be treated as a stranger to the contract. The plaintiff must present proof that this agent acted outside its scope of authority.

## II.

The plaintiff can satisfy his burden in one of two ways: 1) the plaintiff can show lack of authority directly, by showing that the defendant did not have the authority to undertake the acts taken; or 2) the plaintiff can show what amounts to a lack of authority indirectly, by showing that the defendant was acting so contrary to the corporation's best interests that his actions could only have been motivated by personal interests.

As for the first method, Skinner presented absolutely no direct evidence that Holloway, in determining to breach the corporation's loan agreement with Skinner, acted outside the scope of his corporate authority. In fact, the undisputed evidence was that Holloway was the corporate president, and there was no evidence offered showing the president was not authorized to make the decisions he made. As for the second method, the Court correctly notes that there was not more than a scintilla of evidence that Holloway acted to serve his individual interests to the detriment of the corporation. As a matter of law, Skinner cannot prevail on his tortious interference action against Holloway because there was no evidence that Holloway was

acting outside the scope of his authority from the principal.

## III.

The Court correctly assesses my views to the extent I would hold that Holloway's authority to act on behalf of the corporation as he did should end the inquiry. *Accord* 898 S.W.2d at 798 (HECHT, J., concurring) (agent should not be held liable for tortious interference with corporation's contract if the agent acted within the course and scope of authority). Additionally, the Court in effect states that liability can turn on the indirect disregard of corporate authority, by using the corporate position to benefit the individual at the expense of the corporation. The Court, however, errs in not acknowledging that its analysis also inquires into the agent's scope of authority.

Under the first element of the tortious interference with contract cause of action, there must be a contract that was subjected to interference. If the interferer is a party, then there was no contract subjected to interference because a party cannot interfere with himself. *Baker*, 735 S.W.2d at 549. I part company with the Court when it holds that Skinner satisfied the first element by merely showing that there was not a complete identity of interests between Holloway and the corporation. "Complete identity" is not at issue—"corporate authority" is. The Court further errs in completing its analysis by turning to the second element (whether there was willful and intentional act of interference). 898 S.W.2d at 796. This places a square peg into a round hole. The Court unnecessarily complicates the body of law surrounding tortious interference claims made against an officer of a contracting party.

My route is more direct. Absent proof that Holloway lacked the corporate authority to initiate the corporate breach, Skinner cannot prevail as a matter of law in his tortious interference action against Holloway. Therefore, I concur in the Court's judgment.

HIGHTOWER, Justice, dissenting.

I dissent because I disagree with the court's opinion in at least three significant

respects. First, the court misplaces the burden of proof for the affirmative defense of legal justification on the plaintiff. Second, the court has not decided the legal justification question and erroneously assumes, apparently without deciding and absent any analysis, that a corporate officer or agent is legally justified in interfering with a contract between the corporation and a third party when the officer acts in good faith and believes that what he does is for the best interest of the corporation. Third, more than a scintilla of evidence exists to support the jury's finding that Holloway tortiously interfered with the contract between Holligan, Inc. and Skinner.

## I.

I believe that the court has misplaced the burden of proof for the affirmative defense of legal justification. It is undisputed that "the privilege of legal justification or excuse in the interference of contractual relations is an affirmative defense upon which the defendant has the burden of proof." *Sterner v. Marathon Oil Co.*, 767 S.W.2d 686, 690 (Tex.1989); *Victoria Bank & Trust Co. v. Brady*, 811 S.W.2d 931, 939 (Tex.1991). However, the court states that in order to prove the second element of tortious interference, that the act of interference was willful and intentional, "the plaintiff must show that the defendant acted in a fashion so contrary to the corporation's best interests that his actions could only have been motivated by personal interests ..." and apparently that a noncontracting "agent committed an act of interference for reasons personal to the agent...." 898 S.W.2d at 796. By requiring the plaintiff to prove the nonexistence of legal justification in order to prove the second element of tortious interference, the court is placing the

continuing viability of *Sterner v. Marathon Oil Co.* and *Victoria Bank & Trust Co. v. Brady* in question and is effectively abolishing the affirmative defense of legal justification in this context.

## II.

This court granted Graham Holloway's application for writ of error to determine whether Holloway, the president, director and largest shareholder of Holligan, Inc., was legally justified in interfering with a contract between the corporation and a third party, Rick Skinner, as a matter of law.[1] However, the court has not decided the legal justification question, but has instead determined that there is no evidence of tortious interference with the contract between Hooligan, Inc. and Skinner. My disagreement encompasses the court's assumption, absent any analysis, of the standard for the affirmative defense of legal justification.

This court has not addressed directly whether the president, director and largest shareholder of a corporation is legally justified in interfering with a contract between the corporation and a third party. Consequently, before determining whether Holloway was legally justified, the court must ascertain the standard for determining when a corporate officer or agent is legally justified in interfering with a contract between the corporation and a third party. The court erroneously assumes, apparently without deciding and absent any analysis, that a corporate officer or agent is legally justified in interfering with a contract between the corporation and a third party when the officer acts in good faith and believes that what he does is for the best interest of the corporation. 898 S.W.2d at 795.

---

1. On March 30, 1994, the court granted the following points of error in Mr. Holloway's application for writ of error:

   POINT OF ERROR NO. 2:
     The trial court erred in entering judgment and the Court of Appeals erred in affirming that judgment for appellee's on the tortious interference claims because as a matter of law appellant, Graham Holloway, the president, director and largest shareholder of Holligan, Inc. cannot interfere with contracts between Holligan, Inc. and appellees.

   POINT OF ERROR NO. 6:
     The trial court erred in accepting jury question 2 with respect to appellant Graham Holloway because, assuming *arguendo* that appellant, Graham Holloway, could interfere with the contracts between Holligan, Inc. and appellees, such interference was privileged as a matter of law because as president, director and largest shareholder of Holligan, Inc., Graham Holloway had an equal or superior right and interest in the contracts and was making a bona fide exercise of such rights.
   37 Tex.Sup.Ct.J. 609–10 (March 30, 1994).

Texas law concerning the general liability of a corporate officer is relatively clear.[2] However, Texas law concerning the liability of a corporate officer involving tortious interference with a contract between the corporation and a third party is unsettled. For example, *Maxey v. Citizens Nat'l Bank,* 507 S.W.2d 722, 726 (Tex.1974), cited and relied upon by the court, is occasionally mentioned for its statement that "[i]t has been held that an officer or director may not be held liable in damages for inducing the corporation to violate a contractual obligation, provided that the officer or director acts in good faith and believes that what he does is for the best interest of the corporation." *See Eloise Bauer & Assoc. v. Electronic Realty,* 621 S.W.2d 200, 203 (Tex.Civ.App.—Texarkana 1981, writ ref'd n.r.e.); *Eads v. American Bank,* 843 S.W.2d 208, 210 (Tex.App.—Waco 1992, no writ); *B., Inc. v. Miller Brewing Co.,* 663 F.2d 545, 553 (5th Cir.1981). However, *Maxey* did not involve whether a corporate officer or director was immune from liability for tortiously interfering with a contract between the corporation and a third party. *Maxey* involved whether a corporation's liability was derivative of its officers'

liability and the question of the officers' liability was never addressed directly. The plaintiffs sued Citizens National Bank, several of its officers and several other corporations and individuals. After trial, all of the defendants except the Bank were granted instructed verdicts. After judgment was rendered in favor of the Bank's officers and against the Bank, the Bank appealed and the judgment was reversed and remanded. No appeal was taken from the directed verdict for the Bank's officers. On remand, the Bank filed a motion for summary judgment asserting that its liability was derivative of its officers' liability (i.e., based upon the acts of its officers and agents) and since the Bank's officers had been "exonerated" in the first trial, the claims against the Bank were precluded by res judicata and collateral estoppel. This court concluded that the "liability of the bank was independent and direct and not derivative of the acts of the bank's agents." *Maxey,* 507 S.W.2d at 725. As a result, contrary to the court's assumption, *Maxey* is not dispositive of when a corporate officer or agent is legally justified in interfering with a contract between a corporation and a third party.[3]

2. "The general rule ... is that officers of a corporation are insulated from personal liability arising from their activities performed in the scope of their duties for the corporation." *Portlock v. Perry,* 852 S.W.2d 578, 582 (Tex.App.—Dallas 1993, writ denied) (wrongful death). *See Delaney v. Fidelity Lease Limited,* 526 S.W.2d 543, 546 (Tex.1974) (breach of contract). "If a corporate officer commits wrongful acts while conducting the corporation's business, he will be held personally liable for the consequences of those acts." *Rio Grande Land & Cattle Co. v. Light,* 749 S.W.2d 206, 212 (Tex.App.—San Antonio), rev'd in part on other grounds, 758 S.W.2d 747 (Tex.1988) (breach of contract); *Medallion Homes, Inc. v. Thermar Investments,* 698 S.W.2d 400, 403 (Tex.App.—Houston [14th Dist.] 1985, no writ) (breach of contract and violations of Deceptive Trade Practices Act); *Guilbeau v. Anderson,* 841 S.W.2d 517, 519 (Tex.App.—Houston [14th Dist.] 1992, no writ) (negligence and violations of Deceptive Trade Practices Act); *Equinox Enterprises v. Associated Media,* 730 S.W.2d 872, 878 (Tex.App.—Dallas 1987, no writ) (breach of contract and slander).

3. In addition, the various opinions of courts of appeal concerning the liability of a corporate officer involving tortious interference with a contract between the corporation and a third party are also inconclusive. "The agent does not interfere with his principal's business relationships so long as he acts within the agency's scope, rather than pursues purely personal objectives." *American Medical Intern. v. Giurintano,* 821 S.W.2d 331, 335–36 (Tex.App.—Houston [14th Dist.] 1991, no writ) (citations omitted). *See Gonzalez v. Gutierrez,* 694 S.W.2d 384, 388–89 (Tex.App.—San Antonio 1985, no writ); *Russell v. Edgewood Indep. School Dist.,* 406 S.W.2d 249, 252 (Tex. Civ.App.—San Antonio 1966, writ ref'd n.r.e.); *Southwestern States Oil & Gas Co. v. Sovereign Resources,* 365 S.W.2d 417, 422 (Tex.Civ.App.—Dallas 1963, writ ref'd n.r.e.); *B., Inc. v. Miller Brewing Co.,* 663 F.2d at 553). "[A]gents are generally not personally liable for interfering with the principal's business relations. The agent and the principal are treated as one because the agent is the principal's alter ego; their financial interest is the same." *American Medical Intern. v. Giurintano,* 821 S.W.2d 331, 335 (Tex.App.—Houston [14th Dist.] 1991, no writ) (citations omitted). *See John Masek Corp. v. Davis,* 848 S.W.2d 170, 175 (Tex.App.—Houston [1st Dist.] 1992, writ denied); *Baker v. Welch,* 735 S.W.2d 548, 549 (Tex.App.—Houston [1st Dist.] 1987, writ dism'd); *Lone Star Ford, Inc. v. McCormick,* 838 S.W.2d 734, 743 (Tex.App.—Houston [1st Dist.] 1992, writ denied) ("Evidence adduced at trial showed that Smith owned 90 percent of Sonic, which owned all of the stock Lone Star. Further, Smith is the chief operating officer of Lone Star and testified that he acted as

## III.

Other jurisdictions have recognized several theories concerning the liability of a corporate officer or agent involving tortious interference with a contract between the corporation and a third party. First, a corporate officer or agent is not liable for interfering with a contract between the corporation and a third party if the officer or agent acts within the scope of his employment or duties.[4] Second, a corporate officer or agent is not liable for interfering with a contract between the corporation and a third party if the officer or agent acts within the scope of his corporate authority and for the benefit of the corporation.[5] Third, a corporate officer or agent is not liable for interfering with a contract between the corporation and a third party if the officer or agent acts in good faith and in the best interest of the corporation.[6]

Fourth, a corporate officer or agent is not liable for interfering with a contract between the corporation and a third party unless the officer or agent acts outside the scope of his employment and acts with malice.[7] Fifth, a corporate officer is not liable for interfering with a contract between the corporation and a third party if the officer interferes with the contract for corporate, as opposed to personal, interest and uses no improper means.[8]

I believe that the better reasoned standard for a corporate officer or agent's legal justification in interfering with a contract between the corporation and a third party is described in *Forrester v. Stockstill*, 869 S.W.2d 328 (Tenn.1994):

> A corporation can act only upon the advice of its officers and agents, and its officers and directors have a duty to serve the corporation. Important societal inter-

owner and officer of Lone Star in terminating McCormick's and Drury's contracts."). "It is well established [that] an agent cannot be liable for tortious interference with its principal's contracts." *John Masek Corp. v. Davis*, 848 S.W.2d 170, 175 (Tex.App.—Houston [1st Dist.] 1992, writ denied); *Central Savings & Loan Ass'n v. Stemmons Northwest*, 848 S.W.2d 232, 241–42 (Tex.App.—Dallas 1992, no writ) ("Where a ... principal-agent relationship exists, there can be no tortious interference with a contract as a matter of law"); *Baker v. Welch*, 735 S.W.2d 548, 549 (Tex.App.—Houston [1st Dist.] 1987, writ dism'd).

**4.** *See Nordling v. Northern States Power Co.*, 478 N.W.2d 498, 505–06 (Minn.1991); *Bradburn v. Colonial Stores, Inc.*, 273 S.C. 186, 255 S.E.2d 453, 455 (1979); *Georgia Power Co. v. Busbin*, 242 Ga. 612, 250 S.E.2d 442, 444 (1978); *Bleich v. Florence Crittenton Serv.*, 98 Md.App. 123, 632 A.2d 463, 475 (1993); *Nix v. Temple University*, 408 Pa.Super. 369, 596 A.2d 1132, 1137 (1991); *Cronk v. Intermountain Rural Elec. Ass'n*, 765 P.2d 619, 623 (Colo.App.1988); *Cedar Hills Properties v. Eastern Federal*, 575 So.2d 673, 676 (Fla.App.1991); *Fields v. R.S.C.D.B., Inc.*, 865 S.W.2d 877, 879 (Mo.App.1993); *Martin v. Platt*, 179 Ind.App. 688, 386 N.E.2d 1026, 1027 (1979); *Murray v. Bridgeport Hosp.*, 40 Conn.Supp. 56, 480 A.2d 610, 613 (1984).

**5.** *See Forrester v. Stockstill*, 869 S.W.2d 328, 334–35 (Tenn.1994); *9 to 5 Fashions, Inc. v. Spurney*, 538 So.2d 228, 231 (La.1989); *Davenport v. Epperly*, 744 P.2d 1110, 1114 (Wyo.1987); *Olympic Fish Products, Inc. v. Lloyd*, 93 Wash.2d 596, 611 P.2d 737, 739 (1980); *May v. Santa Fe Trail Transportation Co.*, 189 Kan. 419, 370 P.2d 390, 395 (1962); *Bradley v. Philip Morris Inc.*, 194 Mich.App. 44, 486 N.W.2d 48, 51 (1991); *Olivet*

*v. Frischling*, 104 Cal.App.3d 831, 164 Cal.Rptr. 87, 92 (1980); *DeHorney v. Bank of America Nat. Trust and Sav.*, 879 F.2d 459, 464 (9th Cir.1989) (applying California law). *See also HPI Health Care v. Mt. Vernon Hosp.*, 131 Ill.2d 145, 137 Ill.Dec. 19, 24, 545 N.E.2d 672, 677 (1989).

**6.** *See Embree Const. Group v. Rafcor, Inc.*, 330 N.C. 487, 411 S.E.2d 916, 925 (1992); *Welch v. Bancorp Management Services*, 296 Or. 208, 675 P.2d 172, 177 (1983); *Phillips v. Montana Educ. Ass'n*, 187 Mont. 419, 610 P.2d 154, 158 (1980); *Nickens v. Labor Agency of Metro. Wash.*, 600 A.2d 813, 820 (D.C.App.1991); *Murtha v. Yonkers Child Care Ass'n, Inc.*, 45 N.Y.2d 913, 411 N.Y.S.2d 219, 220, 383 N.E.2d 865, 866 (1978); *Shaw v. Burchfield*, 481 So.2d 247, 255 (Miss. 1985); *Griswold v. Heat Incorporated*, 108 N.H. 119, 229 A.2d 183, 188 (1967). *See also* Alfred Avins, *Liability for Inducing a Corporation to Breach Its Contract*, 43 CORNELL L.Q. 55, 56–60, 65 (1957).

**7.** *See Perlman v. Shurett*, 567 So.2d 1296, 1297 (Ala.1990); *Wright v. Shriners Hosp.*, 412 Mass. 469, 589 N.E.2d 1241, 1246 (1992) (defining malice as "for a spiteful, malignant purpose, unrelated to the legitimate corporate interest."); *Roy v. Woonsocket Institution for Savings*, 525 A.2d 915, 919 (R.I.1987) (defining legal malice as "an intent to do harm without justification.").

**8.** *See Eggleston v. Phillips*, 838 S.W.2d 80, 82–83 (Mo.App.1992); *Lay v. St. Louis Helicopter Airways, Inc.*, 869 S.W.2d 173, 178 (Mo.App.1993); *Wagenseller v. Scottsdale Memorial Hosp.*, 147 Ariz. 370, 388, 710 P.2d 1025, 1043 (1985). *See also Meyer v. Enoch*, 807 S.W.2d 156, 159 (Mo. App.1991).

ests are served by corporations having the clear and candid advice of their officers and agents. Fear of personal liability would tend to limit such advice. Consequently, when an officer, director, or employee of a corporation acts within the general range of his authority, and his actions are substantially motivated by an intent to further the interest of the corporation, in claims of intentional interference with employment, the action of the officer, director, or employee is considered to be the action of the corporation and is entitled to the same immunity from liability.

*Id.* at 334–35. Consequently, I would hold that a corporate officer or agent is legally justified in interfering with a contract between the corporation and a third party if the officer or agent acts within the general scope of his corporate authority and for the benefit of the corporation.

### IV.

I now consider whether Holloway, as the president, director and largest shareholder of Holligan, Inc., was legally justified in interfering with the contracts between Holligan, Inc. and Skinner as a matter of law. However, it is unclear whether Holloway is arguing that his status as the president, director and largest shareholder of Holligan, Inc. legally justifies his interference with the contracts between Holligan, Inc. and Skinner as a matter of law and/or that he is attempting to overcome an adverse fact finding as a matter of law. As a result, I will address both issues.

At trial, the jury found that Holloway was not "legally justified in interfering with Holligan, Inc.'s payment of royalties or note payments which accrued and were payable in favor of [Skinner]...." The instruction accompanying this question stated:

A party is "legally justified" in interfering with another's contract if (1) he acts in the bona fide exercise of his rights, or (2) he has an equal or superior right in the subject matter to that of the other party. An officer, director, employee, or substantial shareholder of a corporation may legally induce the corporation to breach a contractual obligation, provided he acts in the

good faith belief that what he does is for the best interest of the corporation. The decision by a corporate officer or director to litigate (and thereby refuse to pay) a disputed claim against the corporation is legally justified.

First, under either theory—whether Holloway was acting in the good faith belief that what he did was for the best interest of the corporation which was included in the jury instruction and which the court erroneously assumes is the standard, or whether he was acting within the general scope of his corporate authority and for the benefit of the corporation which is the standard I would adopt—Holloway's mere status as the president, director and largest shareholder of Holligan, Inc. does not legally justify his interference with the contracts between Holligan, Inc. and Skinner as a matter of law.

Second, "[a] party attempting to overcome an adverse fact finding as a matter of law must surmount two hurdles.... [T]he record must be examined for evidence that supports the jury's finding, while ignoring all evidence to the contrary.... [I]f there is no evidence to support the fact finder's answer, then, the entire record must be examined to see if the contrary proposition is established as a matter of law." *Sterner v. Marathon Oil Co.,* 767 S.W.2d at 690. Under either theory—whether Holloway was acting in the good faith belief that what he did was for the best interest of the corporation, or whether he was acting within the general scope of his corporate authority and for the benefit of the corporation—there was some evidence that Holloway was not "legally justified in interfering with Holligan, Inc.'s payment of royalties or note payments which accrued and were payable in favor of [Skinner]...." Consequently, I would conclude that Holloway, as the president, director and largest shareholder of Holligan, Inc., was not legally justified in interfering with the contracts between Holligan, Inc. and Skinner as a matter of law.

### V.

I also believe that there is more than a scintilla of evidence to support the jury's finding that Holloway tortiously interfered

with the contract between Holligan, Inc. and Skinner. Holloway was the president, director and largest shareholder of Holligan, Inc. and controlled what happened at Holligan, Inc. During 1984–85, Holligan, Inc. was suffering a severe cash flow problem. As a corporate officer, Holloway was required to prioritize between competing claims because Holligan, Inc. was unable to meet all obligations when they came due. In July 1985, Holligan, Inc. defaulted on Skinner's note and royalty agreements. However, in 1984–85, Holloway raised his salary from $24,000 to $33,750, and in 1985–86, Holloway raised his salary from $33,750 to $44,500. This evidence supports Skinner's contention that Holloway induced the corporation to favor his "claim" for an increased salary over Skinner's claim for past due note and royalty agreement payments. Although Holloway attempted to justify his increased salary by the termination of several employees and assumption of their duties, I believe that there is more than a scintilla of evidence to support the jury's finding that Holloway tortiously interfered with the contract between Holligan, Inc. and Skinner.

Consequently, I dissent.