**AFFILIATED COMPUTER
SERVICES, INC.,
Plaintiff,**

v.

**CAREMARK, INC., and Medpartners,
Inc., Defendants.**

No. Civ.A. 3:99–CV–0689–L.

United States District Court,
N.D. Texas,
Dallas Division.

June 9, 1999.

Charles W. Cunningham, Lewis T. LeClair, John Sabine DeGroote, Williams E. Adams, Jr., McKool Smith, P.C., Dallas, TX, George W. Bramlett, Jr., Alan Wright, LaDawn H. Conway, Haynes & Boone, L.L.P., Dallas, TX, for Plaintiff.

Howard M. Pearl, David E. Koropp, Christopher S. Canning, Winston & Strawn, Chicago, IL, Will S. Montgomery, Marlon W. Frazier, Jenkens & Gilchrist, Dallas, TX, for Defendants.

## MEMORANDUM OPINION AND ORDER

LINDSAY, District Judge.

Before the court is Affiliated Computer Services, Inc.'s Motion to Remand, filed April 14, 1999. After careful consideration of the motion, response, reply, the pleadings, the evidence submitted by the parties, and the applicable law, the court grants the Motion to Remand.

## I. *Eactual and Procedural Background*

Plaintiff Affiliated Computer Services, Inc. ("ACS") is a Dallas-based information technology and data processing company. In 1992, ACS and Defendant Caremark, Inc. ("Caremark")'s predecessor in interest entered into a contract for ACS to provide data processing services to Caremark, a company that provides pharmaceutical prescription benefits management services Because this is a motion to remand, all disputed factual contentions are taken in the light most favorable to ACS, the non-removing party. *Burden v. General Dynamics Corp.*, 60 F.3d 213, 216 (5th Cir. 1995).

In 1996 Caremark was acquired by MedPartners, Inc. ("MedPartners"). ACS alleges that in 1997 MedPartners fell into financial difficulties and thus formulated a plan designed to force ACS to unilaterally reduce its pricing structure under the contract with Caremark. MedPartners influenced Caremark to begin a pattern of activities that breached the agreement and were designed to achieve the price reduc-tions MedPartners needed to offset losses it was experiencing elsewhere. ACS has sued Caremark for breach of contract, bad faith, and unfair dealing under the contract. ACS has also sued MedPartners for tortious interference with the ACS–Caremark contract.

ACS filed suit against Caremark and MedPartners ("Defendants") in state court on February 24, 1999. ACS filed its amended state court petition on March 1, 1999, and on March 29, 1999 Defendants removed the case to this court. ACS now moves to remand the case to state court.

## II. *ACS' Motion to Remand*

ACS has moved to remand the case to state court, claiming that complete diversity does not exist between the parties. ACS is a Delaware corporation with its principal place of business in Texas. Caremark is a California corporation with its principal place of business in Illinois, and MedPartners is a Delaware corporation with its principal place of business in Alabama. Defendants argue that even though both ACS and MedPartners are Delaware corporations, and this are citizens of Delaware for purposes of diversity jurisdiction under 28 U.S.C. § 1332, the court should disregard the citizenship of MedPartners because ACS has fraudulently joined MedPartners for the purpose of defeating diversity jurisdiction. Conversely, ACS contends that MedPartners is a proper defendant to this action and therefore the court does not have subject matter jurisdiction over the case, requiring remand to state court.

For Defendants to avoid remand here, they must establish that MedPartners was fraudulently joined. A party alleging fraudulent joinder must show by clear and convincing evidence either that there is no possibility that the plaintiff could establish a cause of action against the non-diverse defendant, or that the jurisdictional allegations in the plaintiff's

pleadings are fraudulent. *Burden,* 60 F.3d at 217; *Dodson v. Spiliada Maritime Corp.,* 951 F.2d 40, 42 (5th Cir.1992). In resolving a fraudulent joinder issue, the district court must evaluate all of the facts presented in the light most favorable to the non-removing party. *Burden,* 60 F.3d at 216; *B., Inc. v. Miller Brewing Co.* 663 F.2d 545, 549 (5th Cir. (Unit A) 1981). The court is also permitted to consider evidence outside the pleadings, such as affidavits, deposition transcripts, and other documentation. *Burden.* 60 F.3d at 217.

■ Defendants argue that MedPartners is not a proper defendant in this case because Texas law does not permit a cause of action for a parent company's tortious interference with a contract entered into by a subsidiary. ACS' state court pleadings clearly allege a cause of action against MedPartners for tortious interference with the contract between ACS and Caremark. Defendants argue that Texas law applies to ACS' claims and rely on *Deauville Corp. v. Federated Department Stores, Inc.,* 756 F.2d 1183 (5th Cir.1985) for the proposition that a parent company cannot be liable for tortiously interfering with its subsidiary's contractual relationships. The *Deauville* case actually does not rule out the possibility that such a cause of action could be maintained; rather, it points out that in most circumstances the parent's interference will be excused by privilege, because the parent is acting to protect its own legitimate financial interest. 756 F.2d at 1196.

Furthermore, the Texas Supreme Court has never settled the issue of whether a parent can interfere with the contracts of its subsidiary. While two state courts of appeal have held that such interference is impossible, a third has held that while this interference is usually justified and excused by the defense of privilege, "a parent corporation is legally capable of tortiously interfering with its wholly-owned subsidiary's contractual relations." *Valores Corporativos, S.A. de C.V. v. McLane Co., Inc.,* 945 S.W.2d 160, 168 (Tex.App.–San

Antonio 1997, writ denied); *cf. H.S.M. Acquisitions, Inc. v. West,* 917 S.W.2d 872, 882–83 (Tex.App.–Corpus Christi 1996, writ denied) (impossible for parent to interfere with wholly-owned subsidiary's contracts); *American Medical Int'l v. Giurintano,* 821 S.W.2d 331, 336–37 (Tex. App.–Houston [14th Dist.] 1991, no writ) (same). The *Valores* court also noted that in *Deauville* the Fifth Circuit viewed the issue as one of privilege rather than capacity, 945 S.W.2d at 167, and relied on the Texas Supreme Court's holding in *Holloway v. Skinner,* 898 S.W.2d 793 (Tex.1995). In *Holloway,* the Texas Supreme Court held that a parent's interest will not always be coterminous with that of its subsidiary and that circumstances may arise where the parent may pursue its interests to the detriment of the subsidiary. 898 S.W.2d at 796.

Based upon the foregoing, it appears that there is a possibility that ACS could maintain a cause of action for tortious interference against MedPartners under Texas law. The parties dispute whether Texas law applies to this dispute, and ACS has argued that Alabama or Illinois law may be applicable instead. A choice of law analysis is not needed here because the court would reach the same result applying either Alabama or Illinois law. Under both of these states' law it is possible to sue a parent for tortious interference with its subsidiary's contracts, provided that the parent is not the mere alter ego of the subsidiary. *See Oxford Furniture Cos., Inc. v. Drexel Heritage Furnishings, Inc.,* 984 F.2d 1118, 1126 (11th Cir.1993) (Alabama law); *Knickman v. Midland Risk Services–Illinois, Inc.,* 298 Ill.App.3d 1111, 1116, 233 Ill.Dec. 153, 700 N.E.2d 458 (Ill. App. 4 Dist.1998) (Illinois law). Defendants have failed to establish that there is no possibility ACS could maintain its tortious interference cause of action against MedPartners; therefore, the parties are not completely diverse and the court does not have subject matter jurisdiction over

this case. The case must be remanded to state court.

### III. *Attorney's Fees and Costs*

ACS also asks the court to award its attorney's fees and costs incurred due to Defendants' improper removal of this case, including the fees and costs involved in filing its motion to remand. Because Texas law is unsettled due to the conflicting opinions of three courts of appeal, the question of whether ACS could maintain a tortious interference claim against Med-Partners is a close one. Although the court has determined that it should remand the case, an award of costs and attorneys fees is not warranted under these circumstances. ACS' request for attorneys' fees and costs is hereby denied.

### IV. *Conclusion*

For the reasons previously stated herein, ACS' Motion to Remand is granted. The above-styled and numbered action is hereby remanded to County Court at Law No. 3, Dallas County, Texas.

**SO ORDERED.**