IN THE SUPREME COURT OF TEXAS








IN THE SUPREME COURT OF TEXAS
 
════════════
No. 04-0138
════════════
 
Unauthorized Practice of Law 
Committee, Petitioner,
 
v.
 
American Home Assurance 
Company, Inc. and 
The Travelers Indemnity 
Company, Respondents
 
════════════════════════════════════════════════════
On Petition for Review from the
Court of Appeals for the Eleventh District of 
Texas
════════════════════════════════════════════════════
 
 
Argued September 
28, 2005
 
 
Justice Johnson, joined by Justice Green, dissenting.
 
 
            
Many matters addressed by briefs of the parties[1] and amici 
involve ethical and potential liability considerations of insurers and their 
staff counsel when staff counsel defend insureds. As 
the Court points out, those considerations do not determine what is or is not 
the unauthorized practice of law. The Court details several such issues, some 
easily-identified and some not-so-easily-identified, that are imbedded in the 
relationships when an insurer selects defense counsel for and controls the 
defense of its insured. Many, if not the majority, of the issues exist 
regardless of whether defense counsel is an employee of the insurer (“staff 
attorney” or “staff counsel”) or independent counsel. Certainly the issues may 
be more complex when staff counsel represents an insured than when independent 
counsel does. Nevertheless, it seems to me that the issue before the Court 
narrows down to statutory construction: Is an insurance corporation’s defense of 
its insureds by the use of staff attorneys the 
practice of law as defined in the State Bar Act. See Tex. Gov’t Code § 81.101(a). The Court holds 
that under certain circumstances it is not. I disagree.
            
I agree that corporate insurance companies are not permitted to practice 
law in Texas. 
___ S.W.3d ___; see Tex. Bus. 
Corp. Act 
art. 2.01(B)(2) (providing that a corporation may not be 
organized under the Act if any one of its purposes is to engage in an activity 
that requires a license and such a license cannot be granted to a corporation). Former Penal Code article 430a[2] specifically prohibited corporations from 
practicing law, but that article was repealed in 1949. There does not seem to 
have been a great deal of discussion about whether its repeal was a legislative 
signal that corporations were free to either practice law or defend insureds with staff attorneys. As the Court notes, the 
legislative record does not indicate that it was. See ___ S.W.3d ___.
The 
Legislature specifically authorized the practice of law by entities other than 
natural persons over thirty-five years ago. Beginning in January 1970, certain 
types of corporations were statutorily authorized to render professional legal 
services. Tex. Rev. 
Civ. Stat. art. 1528e § 3(d).[3] The corporate form was limited to 
professional legal corporations organized for the sole and specific purpose of 
rendering legal services. See id. “Professional Legal Services” were 
defined as
 
any type 
of personal service rendered by attorneys-at-law which requires as a condition 
precedent to the rendering of such service within this state, the obtaining of a 
license, permit, certificate of registration, or other legal authorization and 
which prior to the passage of this Act and by reason of law could not be 
performed within this state by a corporation.
 
Id. at § 
3(c). Insurance companies are not professional legal corporations. And 
because actual or beneficial ownership of professional legal corporations 
remains statutorily limited to licensed attorneys, insurance companies cannot 
own or operate Texas professional legal corporations. See 
id. If they could, the case now before the Court almost certainly would not 
be here. It is here because corporate insurers cannot be licensed to practice 
law, but they want the economic benefit of staff attorneys practicing law by 
defending insureds who are not corporate affiliates, 
subsidiaries, employees, officers, or agents. Seeking an economic benefit is not 
bad. In this instance, however, the benefit sought is not one that can be 
obtained by a corporation without running afoul of Texas’ statutory 
definition of practicing law.
In Hexter Title & Abstract Co. v. Grievance 
Committee, 179 S.W.2d 946 (Tex. 1944), this Court considered whether a 
corporation was practicing law when attorney employees of the corporation 
prepared documents related to defects in title and offered them to third 
persons. Although the corporation had no connection with the transactions, the 
corporation hoped to issue policies of title insurance as a result of providing 
the documents. As background, the Court referenced the State Bar Act and two of 
its relevant purposes: “It will be noted that one of the purposes of the . . . 
act was to subject all members of the Bar to the provisions of the act, and 
another purpose was to prohibit those not members of the State Bar from 
practicing law.” Id. at 948 (discussing Act of April 6, 
1939, 46th Leg., R.S., ch. 1, §§ 2, 3, 1939 Tex. Gen. 
Laws 64-66, repealed by Act of April 30, 1987, 70th Leg., R.S., ch. 148, § 3.01, 1987 Tex. Gen. Laws 534, 593 (former Tex. Rev. Civ. Stat. 320a-1)). The Court then 
addressed the question of whether the corporation was practicing law “within the 
meaning of the Statutes of this State?” Id. at 949. The controlling statute was former Penal Code 
article 430a which we quoted in relevant part:
 
Section 1. It shall be unlawful for any corporation or any 
person, firm, or association of persons, except natural persons who are members 
of the bar regularly admitted and licensed to practice law.
 
Sec. 2. For the purpose of this Act, the practice of law is 
defined as follows: Whoever * * * (b) For a consideration, reward or pecuniary 
benefit, present or anticipated, direct, or indirect, advises or counsels 
another as to secular law, or draws a paper, document or instrument affecting or 
relating to secular rights; * * * or (d) For a consideration, direct or 
indirect, gives an opinion as to the validity of the title to real or personal 
property, * * * is practicing law. Nothing in this section shall be construed to 
prohibit any person, firm, association or corporation, out of court, from 
attending to and caring for his or its own business, * * * nor from preparing 
abstracts of title, certifying, guaranteeing or insuring titles to property, 
real or personal, or an interest therein, or a lien or encumbrance thereon, * * 
*.
 
Sec. 3. It shall be unlawful for any corporation to practice 
law as defined by this Act or to appear as an attorney for any person other 
than itself in any court in this State, or before any judicial body or any 
board or commission of the State of Texas; or hold itself out to the public or 
advertise as being entitled to practice law; and no corporation shall prepare 
corporate charters or amendments thereto, or other legal documents not relating 
to its authorized business, or draw wills; or hold itself out in any manner 
directly or indirectly as being entitled to do any of the foregoing acts; * * 
*.
 
 
Id. at 951 
(emphasis added). We held that the title and abstract company was practicing law 
even if the documents were prepared by licensed attorneys and even if non-lawyer 
corporate executives did not direct how the documents were to be prepared:
 
The fact 
that the corporation has several licensed lawyers in its employment to prepare 
the instruments in question does not alter the case. According to the agreed 
statement of facts the executive officers of the corporation direct the kind of 
instruments to be drawn and what should be put in them. But even in the 
absence of such direction by the executives the result would be the same. 
The attorney in preparing such papers does so as the agent of the corporation by 
whom he is employed. His first obligation of loyalty is to the corporation. 
His acts are the acts of the corporation, and even though the corporation 
acts through an attorney, it is nevertheless practicing law.
 
Id. at 953-54 
(emphasis added).
Fairly 
reading former article 430a, section 2 addressed out-of-court activities and 
section 3 addressed in-court activities. Section 3 specifically prohibited 
corporations from appearing “as an attorney for any person other than itself in 
any court in this State.” Id. at 
951. As the Court has noted, article 430a specifically provided that an 
insurer was not precluded from defending its insureds 
by lawyers of its own selection. Id. But what the statute did not 
say was that a corporation could, itself, defend its insureds in court.
More than 
twenty years after Hexter was decided, another 
case presented the issue of whether a nonprofit corporation was practicing law 
by using employee attorneys to represent indigents. Touchy v. Houston Legal Found., 432 S.W.2d 690 (Tex. 1968). Hugo A. 
Touchy, three other practicing attorneys, and an organization composed of 
attorneys (collectively, “Touchy”) brought suit against the Houston Legal 
Foundation, a charitable corporation.[4] Touchy sought to enjoin the Foundation 
from engaging in (1) practices which allegedly violated the Texas Canons of 
Ethics, (2) the unauthorized practice of law, and (3) practices which were 
demeaning to the legal profession and economically harmful to the plaintiffs. 
Id. at 
691. As to the unauthorized practice of law claim, Touchy asserted that 
the Foundation was practicing law without authorization by directly representing 
clients by signing pleadings, motions, and other documents filed in court. 
Id. at 
693.[5] The State Bar Act then provided that all 
persons licensed to practice law were members of the 
State Bar and all persons not members were “‘prohibited from practicing law in 
this State.’” Id. at 695 (quoting Act of April 6, 1939, 46th Leg., R.S., 
ch. 1, §§ 2, 3, 1939 Tex. Gen. Laws 64-66, repealed 
by Act of April 30, 1987, 70th Leg., R.S., ch. 
148, § 3.01, 1987 Tex. Gen. Laws 534, 593 (former Tex. Rev. Civ. Stat. 320a-1)).
The 
Foundation responded by filing a plea in abatement challenging Touchy’s standing to bring suit and a motion for summary 
judgment urging that Touchy did not have standing and that, as a matter of law, 
the Foundation was neither practicing law nor engaging in conduct demeaning to 
the profession. Id. at 
691. The trial court granted both the plea in abatement and the motion 
for summary judgment, then dismissed the suit. 
Id. The 
court of appeals affirmed. Id. This Court held that by sustaining 
the plea in abatement, the trial court held that Touchy did not have standing to 
maintain the suit and could not have reached the merits. Id. at 
693. The Court held that Touchy had standing, reversed the lower court 
judgments and remanded for further proceedings. In remanding, the Court set out 
the manner in which the unauthorized practice of law claim was to be tried:
 
The trial 
of the cause is to be governed by the following specific instructions: The 
petitioners will have the burden of pleading and proving that the Foundation is 
engaged in the unlawful practice of law by directly representing clients as an 
attorney, by signing pleadings in its name, or by appearing for such clients 
through its employees, in presenting pleadings, motions, orders and other 
documents filed in the several courts of this State. Without pleadings and 
proof establishing that the activities of the Foundation constitute the practice 
of law, cases such as San Antonio Bar Association v. Guardian Abstract & 
Title Co., 291 S.W.2d 697 (1956) and Hexter Title & Abstract Co. v. Grievance 
Committee, 179 S.W.2d 946 (1944), will have no application. In each of those 
cases, the title companies were corporations for profit. Charges were made and 
fees were received for legal services rendered to clients of the companies by 
employee attorneys of the companies. In Hexter, 
this Court pointed out that the facts showed that the employee attorney’s first 
loyalty was to the corporation for which he worked rather than to his client; on 
occasions, superior officials in the corporation, some being lay officials, 
instructed the employee attorney as to what kind of instrument to prepare and as 
to the phrasing of the instrument.
 If, on the trial of the case, it is 
established by competent evidence that the Foundation is truly a legal aid 
society which acts merely as a conduit or intermediary to bring the attorney and 
client together and does not purport to control or exploit the manner in which 
the attorney represents his indigent client, the operations and activities of 
the Foundation should not be held to be in violation of Article 320a-1, Vernon’s 
Annotated Civil Statutes, which provides that ‘all persons not members of the 
State Bar are hereby prohibited from practicing law in this State.’
 
Id. at 694-95 
(emphasis added). Two points made by the Court are notable in regard to the 
pending matter. First, the Court recognized that actions of the attorneys 
employed by the Foundation were those of the corporation and that Touchy had the 
burden to prove “the Foundation is engaged in the unlawful practice of law by 
directly representing clients as an attorney, by signing pleadings in its name, 
or by appearing for such clients through its employees, in presenting 
pleadings, motions, orders and other documents filed in the several courts of 
this State.” Id. at 694 (emphasis added). Second, 
the Court distinguished for-profit corporations where employees provided legal 
services that resulted in economic benefit to the corporation from nonprofit 
corporations where neither the attorney nor the corporation benefitted. Even as 
to the nonprofit Foundation, the Court did not indicate that if the attorneys 
employed by the corporation filed pleadings and documents in court that the 
corporation was not practicing law. The Court simply stated that if the 
Foundation truly functioned as a legal aid society which acted only as a conduit 
or intermediary (1) to bring the attorney and client together and (2) which did 
not purport to control or “exploit” the manner in which the attorney represented 
the indigent client, the Foundation “should not be held to be in violation of 
Article 320a-1, Vernon’s Annotated Civil Statutes, which provides that ‘all 
persons not members of the State Bar are hereby prohibited from practicing law 
in this State.’” Id.[6]
The State Bar 
Act (the Act) presently addresses the question of when a person is practicing 
law. See Tex. Gov’t Code ch. 81. In Hexter, we placed our decision “largely upon the 
statutes” then in place, and did not rely on our inherent or implied powers. 
Hexter, 179 S.W.2d at 
954. The Court need take no different approach in this case because the 
Act directly addresses the issue.[7] The relevant provisions of the Act are 
not substantively different from provisions of former Penal Code article 430a 
which this Court addressed in Hexter, or the 
instructions as to how to try the unauthorized practice of law claim in 
Touchy. The Act now provides that for purposes of its provisions,
 
the 
“practice of law” means the preparation of a pleading or other document incident 
to an action or special proceeding or the management of the action or proceeding 
on behalf of a client before a judge in court as well as a service 
rendered out of court, including the giving of advice or the rendering of any 
service requiring the use of legal skill or knowledge, such as preparing a will, 
contract, or other instrument, the legal effect of which under the facts and 
conclusions involved must be carefully determined.
 
Tex. Gov’t Code § 81.101 (emphasis 
added). In construing the Act, we ascertain and give effect to the Legislature’s 
intent as expressed by the plain and common meaning of the statute’s words, 
State v. Shumake, 199 S.W.3d 279, 284 (Tex. 
2006), unless a contrary intention is apparent from the context, Taylor v. 
Firemen’s and Policemen’s Civil Service Commission of the City of Lubbock, 
616 S.W.2d 187, 189 (Tex. 1981), or unless such a construction leads to absurd 
results. Univ. of Tex. 
S.W. Med. Ctr. v. Loutzenhiser, 140 S.W.3d 351, 
356 (Tex. 
2004).
Former 
article 430a section 3 precluded a corporation from practicing law or appearing 
in court “as an attorney for any person other than itself” whereas the current 
Act effectively incorporates the prohibition on appearing in court for another 
by including the phrase “on behalf of a client” in the definition of “practice 
of law.” Tex. Gov’t 
Code § 81.101(a). The 
Act also provides that a person may not practice law in Texas unless the person is a member of the state bar and 
that the state bar is composed of those persons licensed to practice law in 
Texas. 
Id. §§ 
81.051, .102(a). The restrictions are essentially the same as those in 
former Penal Code article 430a, section 1, which formed the basis for Hexter, and in the State Bar Act, which formed the 
basis for Touchy. The current Act does not make special reference to 
insurers and the practice of law as did former article 430a. The context of the 
definition’s statement that the practice of law includes “the management of the 
action or proceeding on behalf of a client before a judge in court” does not 
indicate that the words do not mean what they clearly say: management of a court 
proceeding on behalf of another person is the practice of law. See Shumake, 199 S.W.3d at 284; 
Taylor, 616 S.W.2d at 189.
In 
determining whether an insurer practices law by having its staff attorney 
represent an insured in a lawsuit, the logical place to begin is with the 
premise that a corporation cannot act by itself. See 
Touchy, 432 S.W.2d at 694; Hexter, 179 S.W.2d at 954. Corporations are legal 
entities that function through actions of people. See In re Vesta Ins. Group, Inc., 192 S.W.3d 759, 762 (Tex. 2006) (noting that corporations must act through 
human agents); Holloway v. Skinner, 898 S.W.2d 793, 795 (Tex. 1995) 
(“Corporations, by their very nature, cannot function without human agents.”). 

The parties 
agree that staff attorneys are employed for the purpose of defending insureds at a lower cost than could be achieved if the 
insurer hired independent counsel. The attorney-client relationship between a 
staff attorney and an insured comes into being and continues only because of the 
staff attorney’s employment by the insurer. Staff attorneys defending insureds thus are employees performing tasks they were 
employed to perform and defending persons they are assigned to defend by their 
employer who benefits financially by the staff attorneys’ practice of law. The 
actions of staff attorneys in so defending insureds 
undeniably are actions of the corporation. See In re Vesta, 192 S.W.3d at 762; Holloway, 898 S.W.2d at 
796; Touchy, 432 S.W.2d at 694; Hexter, 
179 S.W.2d at 954.
When a 
corporation’s employee attorneys prepare documents for and otherwise represent 
the corporation itself, the corporation is not practicing law as defined by the 
plain language of section 81.101(a) of the Act. The attorney employees’ actions 
in such instances are actions of the corporation—it is representing itself. 
See In re Vesta, 192 S.W.3d at 762 (“‘As a general rule, the actions of a corporate agent on 
behalf of the corporation are deemed the corporation’s acts.’” (quoting Holloway, 898 S.W.2d at 795)). There is 
no “client” involved as to such corporate actions other than the attorney-client 
relationship between the corporation’s employee attorneys and their corporate 
employer. This means that an insurer representing itself through actions of a 
staff attorney is not practicing law because the insurer is not preparing 
pleadings or documents or managing a lawsuit on behalf of a client. But it is 
different when the insurer’s staff attorneys represent insureds in lawsuits. Hexter, 179 S.W.2d at 953-54 (“The attorney in 
preparing such papers does so as the agent of the corporation by whom he is 
employed. . . . His acts are the acts of the corporation, and even though the 
corporation acts through an attorney, it is nevertheless practicing law.”). 
Insureds are not corporate employees or officers who 
are being defended for actions they took on behalf of the corporation so that 
their defense is in actuality a defense of the corporation. Insureds are, quite simply, legal entities completely 
separate from the insurance corporation who must be defended because of acts or 
omissions not considered to be those of the insurer. So the insurance 
corporation is not representing itself when it represents its insureds.
There is no 
contention that insurers are precluded from having staff counsel represent the 
insurers’ own interests in court. It is not unusual for multiple attorneys, each 
representing different interests, to be present at a proceeding involving an 
insured. For example, an insured driver involved in an automobile accident might 
hire a lawyer who then files suit against the driver of the other vehicle. The 
other driver might assert a counterclaim, or a passenger might join in the same 
suit and sue the insured. The liability insurer of the original plaintiff will 
usually hire a separate attorney to defend the claims against the insured and to 
possibly represent the insurer’s subrogation interest, if any. Or if a claim 
against the insured involves exposure in excess of primary policy limits and an 
excess policy is in place, an attorney for the excess carrier may become 
involved. Or an insurer might have an attorney actually file suit on a 
subrogation claim. If an insurer wants to have staff counsel represent its own 
interests, it may do so, but if staff counsel represents the insured then the 
insurer is also representing a client in court proceedings and is practicing 
law. See Touchy, 432 S.W.2d at 694-95; Hexter, 179 S.W.2d at 953-54. 
Interpreting 
the State Bar Act to preclude staff attorneys from defending insureds does not yield an absurd result. See Loutzenhiser, 140 S.W.3d at 
356. Both authority to control as well as 
responsibility for controlling corporate actions ultimately lie with the 
corporation’s board of directors, and no claim is made by American Home that its 
board membership is limited to licensed attorneys. A corporate board’s first 
duties are to the corporation, not customers of the corporation. See Holloway, 898 S.W.2d at 795 (noting that it is the duty 
of corporate officers to protect the interests of the corporation). As 
part of its duties a board establishes policies, gives overall guidance to the 
corporation, and hires corporate managers to see that corporate policies and 
guidance are followed in fulfilling corporate purposes. The board may delegate 
its authority or right to control the corporation’s actions by control of its 
employees, but the board ultimately remains responsible for corporate 
actions.
Corporate 
purposes can be varied, but it cannot seriously be contended that a for-profit 
corporation does not have making profits and enhancing shareholder value as its 
primary goals.[8] Good management practices dictate that 
corporate managers and employees who perform well and increase profits will be 
rewarded while managers and employees who do not perform well or meet 
performance goals will usually experience negative employment actions. American 
Home and amici urge that staff attorneys’ decisions 
and conduct in representing insureds have not induced 
and will not induce negative corporate personnel actions, and there is no reason 
to doubt the sincerity of their position. But human experience teaches that in 
the corporate business community, which is the community inhabited by insurance 
companies, when profit margins are the focus of the entity and are challenged by 
factors such as adverse loss ratios, downturns in general economic conditions, 
or premium price wars, then cost-cutting measures must be, and are, instituted. 
If such measures are not instituted, every person associated with the 
corporation feels repercussions, including shareholders whose stock price begins 
to fall, the board of directors that is responsible to the shareholders, 
management, and each employee of the corporation whose employment depends on the 
financial success of the business and their individual contribution to that 
success. In such circumstances, it defies reason to believe that staff attorneys 
will be immune from cost-cutting of some nature, even if they are immune at all 
other times. Cost cutting as to staff attorneys, whenever it occurs, may be in 
the form of being pressured to handle more lawsuits per lawyer, postponing or 
refraining from engaging experts, limiting referrals of suits to outside counsel 
even if retaining the suit is ethically questionable, etc.[9] But corporate cost cutting will come 
sometime, whether by one of the named insurers in this case, by one or some of 
amici, or by other corporate insurers. And cost 
cutting may occur because of financial pressures on the corporation or simply 
because it is part of the nature of business managers and insurance claims 
departments to strive for better performance by reducing claims payments and 
expenses. Most likely the cost-cutting pressures will come from management who 
are not all attorneys with an understanding of and commitment to the same 
ethical duties to clients that staff attorneys have, who are not required to 
make decisions within the context of professional ethics rules, but who 
nevertheless are in the corporate chain of authority above the staff attorneys. 
Therein lies the main difference between an insurance 
corporation and a professional legal corporation. Ultimate control of a 
professional legal corporation is with attorneys subject to the professional, 
ethical, and disciplinary rules of conduct. A professional legal corporation 
also has profit as a goal and seeks to maximize the difference between fee 
income and expenses. But the professional legal corporation has shareholders who 
are licensed attorneys subject to and limited by professional, ethical, and 
disciplinary rules. See ___ S.W.3d ___ (“To ensure the quality and 
integrity of the bar, the Court requires continuing education and imposes strict 
disciplinary rules, enforced through the grievance process.”). When insurance 
company policies and procedures are formulated and enforced, non-attorney board 
members, managers, and shareholders are not ethically constrained as are lawyers 
who are subject to professional discipline. See Touchy, 432 S.W.2d at 694. 
This record 
does not evidence directors and managers of the insurers having made anything 
but ethical business decisions in fulfilling their duties to the corporation. 
But ethical duties imposed on licensed attorneys as to their clients are 
different than business ethics of the commercial marketplace. The “practice of 
law” definition in the State Bar Act does not contain profit or loss 
considerations. Tex. Gov’t Code § 
81.101. The definition, as relevant here, references only 
actions taken on behalf of a client, not economic factors. It does not contain 
an exception allowing corporate insurers to defend insureds whose interests are “congruent” to those of the 
insurer so the insurer can minimize defense costs and economically benefit its 
non-attorney management and shareholders. Id.
In sum, the 
Act does not preclude insurers from representing their own interests in lawsuits 
if they choose to do so. But under the State Bar Act, a corporate insurer cannot 
represent a client in a lawsuit. Because acts of staff attorneys are acts of the 
insurer, when staff attorneys defend insureds in 
lawsuits the insurer violates the Act, is practicing law without a license, and 
is engaging in the unauthorized practice of law. I would reverse the judgment of 
the court of appeals and affirm the judgment of the trial court.
 
 ________________________________________
 Phil Johnson
 Justice
 
OPINION DELIVERED: March 
28, 2008






[1] 
Unauthorized Practice of Law Committee (UPLC), and American Home Assurance Co., 
and Travelers Indemnity Co. (collectively, “American Home”).

[2] 
Act of May 31, 1933, 43rd Leg., R.S., ch. 238, §§ 1-3, 
1933 Tex. Gen. Laws 835-38, repealed by Act of May 19, 1949, 51st Leg., 
R.S., ch. 301, § 1, 1949 Tex. Gen. Laws 548.

[3] 
Originally enacted as Act of May 28, 1969, 61st Leg., R.S., ch. 779, 1969 Tex. Gen. Laws 2304 (effective Jan. 1, 
1970).

[4] 
The Foundation’s trustees were all licensed attorneys or judges who were members 
of the bar. Touchy v. Houston Legal Found., 417 
S.W.2d 625, 628 (Tex. Civ. App.—Waco 1967) rev’d 432 S.W.2d 690 (Tex. 1968).

[5] 
Touchy is not completely clear that attorneys employed by the Foundation 
were the persons signing pleadings, motions, and documents filed in court. But 
no individual employees of the Foundation were parties to the appeal and 
allegedly engaging in the unauthorized practice of law, thus the employees 
signing pleadings and documents on behalf of the Foundation apparently were 
employee attorneys of the Foundation. The court of appeals’ opinion indicates 
that attorneys employed by the Foundation were the persons signing and filing 
pleadings, etc. on behalf of the Foundation. Touchy, 
417 S.W.2d at 628-29.

[6] 
Nonprofit legal services corporations may now contract to pay for services 
rendered by an attorney to participants in the corporation’s plan. Tex. Ins. Code § 961.001(4). The corporation 
may not, however, contract to practice law, control or attempt to control the 
relationship between a participant and the participant’s attorney, or allow a 
“contracting attorney” to be an employee of the corporation. Id. § 
961.303.

[7] 
For discussions of the Court’s inherent and implied powers, see State Bar v. 
Gomez, 891 S.W.2d 243, 245 (Tex. 1994), and 
Eichelberger v. Eichelberger, 582 S.W.2d 395, 398-99 (Tex. 1979).

[8] 
Such goals are not criticized; they drive free market economies.

[9] 
The difficulty with such decisions is demonstrated by one amicus’s assertion that staff counsel 
do not represent insureds when there is a 
material conflict of interest on a matter that is likely to be litigated in the 
underlying claim. As an example, the amicus claims that a late notice defense 
would not be an issue in an underlying tort case. On its face that assertion may 
not seem problematical. But even if the late notice question is not an issue in 
the tort case, it might be hard for defense attorneys to avoid dealing with late 
notice facts and questions in defending the tort case. For example, in preparing 
for and defending depositions of the insured, a defense attorney almost 
assuredly will review all the facts surrounding the occurrence with the insured, 
including when the insured found out about the incident (if the insured was not 
personally involved), and what actions the insured took after the incident. In 
pre-suit depositions, many plaintiff’s attorneys are 
curious about what the defendants did after the occurrence, such as reporting 
the incident to the insurer. For an example of a late notice defense case where 
the late-notice facts may not have mattered in defense of the tort case, but 
ended up mattering a great deal to the defense attorney and the insurer, see 
Employers Casualty Co. v. Tilley, 496 S.W.2d 552 
(Tex.1973).